# IN RE KACHAINY C.*
## (AC 21208)

Landau, Mihalakos and Freedman, Js.

Argued September 14—officially released December 25, 2001

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Bradford J. Chaucer*, with whom was *William R. Kinloch*, for the appellant (respondent mother).

*Mary K. Lenehan*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

LANDAU, J. The respondent mother appeals from the judgment of the trial court terminating her parental rights with respect to her daughter.[1] On appeal, the respondent claims that the court improperly (1) concluded that when adjudicating a petition for termination of parental rights pursuant to General Statutes (Rev. to 1999) § 17a-112 (c) (1),[2] the court is not required to

---

[1] The judgment also terminated the parental rights of the respondent father, who is not a party to this appeal. We refer in this opinion to the respondent mother as the respondent.

[2] General Statutes (Rev. to 1999) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and *to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 . . . that such efforts are not appropriate* . . . and (3) that . . . (B) the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding, or (2) is found to be neglected or uncared

find by clear and convincing evidence that the department of children and families (department) made reasonable efforts to reunify the child and parent or that the parent is unwilling or unable to benefit from reunification services where the court previously made those findings pursuant to General Statutes § 17a-110 (b),[3] and (2) found that the respondent failed to achieve personal rehabilitation within the meaning of General Statutes (Rev. to 1999) § 17a-112 (c) (3) (B).[4] The respondent also claims that § 17a-110 is unconstitutional in that it permits the court to find a statutory ground for termination by less than clear and convincing evidence. We affirm the judgment of the trial court.[5]

In 1992, the trial court, *DeMayo, J.*, adjudicated the child neglected and committed her to the protective custody of the petitioner, the commissioner of children and families (commissioner), pursuant to General Statutes § 46b-120, because the child was being denied proper care and attention, specifically, because the respondent was unable to provide the care that the medically fragile child required. The commissioner's temporary custody was extended repeatedly. In August, 1999, the commissioner filed a petition to terminate the

for and . . . has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and *has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child* . . . ." (Emphasis added.)

[3] General Statutes § 17a-110 (b) provides in relevant part: "At a hearing held in accordance with subsection (k) of section 46b-129 and section 17a-111b, *the court shall determine the appropriateness of continuing efforts to reunify a child with the child's family.* If the court finds that such efforts are not appropriate, the Department of Children and Families shall within sixty days of such finding either (1) file a petition for the termination of parental rights . . . ." (Emphasis added.)

[4] See footnote 2.

[5] Because we disagree with the respondent's first claim, we need not address her claim that the court improperly rendered an articulation of its decision terminating the respondent's parental rights.

parental rights of the respondent with respect to the child on the ground that the respondent had failed to achieve such a degree of personal rehabilitation as to encourage a belief that she would be able to assume a responsible position in the child's life within a reasonable time. See General Statutes (Rev. to 1999) § 17a-112 (c) (3) (B). The commissioner also alleged that there was no ongoing parent-child relationship that ordinarily develops as a result of a parent having met, on a continuing basis, the physical, emotional, moral or educational needs of the child and that to allow further time for the establishment or reestablishment of such a relationship would be detrimental to the best interest of the child. See General Statutes (Rev. to 1999) § 17a-112 (c) (3) (D). Additional procedural facts will be set forth as necessary.

In adjudicating the termination petition, the court, *Rogers, J.,* found the following facts by clear and convincing evidence. The child was born in 1990 with a chronic, life threatening illness. As a result of her illness, the child has a significant life threatening lung disease. Over the years, physicians frequently changed the medications used to treat this disease because the child's immune system would respond to the treatment erratically. To this day, the child's health remains fragile and must be regulated and monitored closely to prevent its further deterioration. At the time of the termination hearing, the child was taking five medications several times a day. She was also taking three additional medications on an as-needed basis. During the summer, she often suffers respiratory distress and must use a nebulizer, sometimes as often as four times a day.

The respondent began to receive support services administered through the Yale Child Study Center in 1991. The patient care manager who worked with the respondent found that the respondent was unable to recognize the child's symptoms of illness, to administer

medications regularly or to contact the hospital when the child was ill. Consequently, the commissioner filed a neglect petition. The child was eighteen months old in 1992 when she was placed in the commissioner's protective care. At that time, she had severe developmental delays, was grossly underweight and had been hospitalized on numerous occasions.

Since that time, the child has resided in a foster home, where her foster mother provides her with exceptional care. The foster mother strictly complies with the child's medical regime, regularly attends the medical clinic and is able to recognize symptoms of illness and to communicate with medical providers. The child considers her foster mother to be her psychological parent. At the time of the termination hearing, the child was happy and had no significant emotional or behavioral problems. She referred to the respondent as her "other mom."

When the child was in the commissioner's protective custody, the respondent was aware that she was welcome to participate in the child's medical treatment at Yale. She, however, missed a majority of the child's medical appointments between 1992 and 2000. In 1998, she began to receive notice of appointments in Spanish, her native tongue. It was important for the respondent to attend the child's medical appointments, not only to spend time with the child, but also to learn how to care for her. The child's nurse practitioner testified unequivocally and credibly that the respondent cannot adequately care for the child.

The child's medical providers indicated that it was essential for the respondent to visit regularly with the child so that she could utilize her training with respect to the child's medical needs. The respondent visited the child inconsistently despite the fact that the visits were allowed to take place in the respondent's home.

In May, 1995, the department offered the respondent the opportunity to increase her visits with the child from once to twice a week. Because the respondent failed to attend the additional visits consistently, the department canceled the additional visits in January, 1996. Between June, 1996, and October, 1999, the respondent visited the child only fifty-two out of a possible 110 times. In June, 1998, the respondent was referred to the New Haven Family Alliance for intensive preservation services, but the case was closed one month later when the respondent missed three out of four appointments.

In a memorandum of decision dated July 26, 2000, Judge Rogers granted the petition to terminate the respondent's parental rights with respect to her child, concluding that she had failed to achieve personal rehabilitation.[6] The respondent appealed.

As we turn to address the respondent's claims, we are mindful of the gravity of the proceedings in a termination of parental rights case. Our statutes define "the termination of parental rights as the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his or her parent. It is, accordingly, a most serious and sensitive judicial action. *Anonymous* v. *Norton*, 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). Although the severance of the parent-child relationship may be required under some circumstances, the United States Supreme Court has repeatedly held that the interest of parents in their children is a fundamental constitutional right that undeniably warrants deference and, absent a powerful countervailing interest, protection. *Stanley* v.

---

[6] Judge Rogers concluded that the petitioner had failed to prove by clear and convincing evidence that there was no ongoing parent-child relationship between the respondent and the child.

*Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); see also *In re Juvenile Appeal (83-CD)*, 189 Conn. 276, 295, 455 A.2d 1313 (1983) . . . ." (Internal quotation marks omitted.) *In re Eden F.*, 48 Conn. App. 290, 306–307, 710 A.2d 771 (1998), rev'd on other grounds, 250 Conn. 674, 741 A.2d 873 (1999).

## I

The respondent's first claim is that the court improperly concluded that when adjudicating a petition for termination of parental rights, § 17a-112 (c) (1) does not require the court to find by clear and convincing evidence that the department made reasonable efforts to reunify the child and parent or that the parent is unwilling or unable to benefit from reunification services, where the court previously made those findings in a hearing held pursuant to § 17a-110.[7] In response to this claim, the petitioner argues that the issue is moot. Although we conclude that the claim is not moot, the respondent's claim lacks merit.

## A

"Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . Since mootness implicates subject matter jurisdiction . . . it can be raised at any stage of the proceedings. . . . A case becomes moot when due to intervening circumstances a controversy between the parties no longer exists. . . . An issue is

[7] For clarity, we restate the respondent's statement of the issues on appeal in which she claims that the court improperly (1) found pursuant to § 17a-110 that the petitioner had proven that continuing efforts to reunify the child with the respondent were no longer appropriate, (2) failed to conduct an appropriate hearing to determine whether the department should be relieved of the obligation to continue to make reasonable efforts to reunify the family and (3) found that the department had made reasonable efforts to reunify or that it was relieved of that responsibility by clear and convincing evidence.

moot when the court can no longer grant any practical relief." (Citation omitted; internal quotation marks omitted.) *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 865, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001). "Whenever a claim of lack of jurisdiction is brought to the court's attention, it must be resolved before the court can proceed." (Internal quotation marks omitted.) *Doe* v. *Dept. of Public Health*, 52 Conn. App. 513, 517, 727 A.2d 260, cert. denied, 249 Conn. 908, 733 A.2d 225 (1999).

"The test for determining mootness of an appeal is whether there is any practical relief this court can grant the appellant. . . . [I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . If no practical relief can be afforded to the parties, the appeal must be dismissed." (Citation omitted; internal quotation marks omitted.) *ALCA Construction Co.* v. *Waterbury Housing Authority*, 49 Conn. App. 78, 81, 713 A.2d 886 (1998). The respondent has appealed from the judgment terminating her parental rights, claiming, in part, that in terminating her rights, the court improperly relied on a finding made by a prior court. If this court were to agree with that claim, we could reverse the judgment terminating the respondent's parental rights, thus providing relief. The respondent's claim therefore is not moot.

B

The following procedural history is relevant to the respondent's claim that the court improperly concluded that it was not required to find by clear and convincing evidence that it was no longer appropriate for the department to make reasonable efforts to reunify the child and the respondent because the finding had been made previously. Subsequent to Judge DeMayo's committing the child to the temporary custody of the com-

missioner, several of the trial courts granted, in seriatim, petitions for extension of the child's commitment. In her July 26, 2000 memorandum of decision, Judge Rogers stated in part: "[T]o terminate parental rights, [the petitioner] must initially show by clear and convincing evidence that [the department] has 'made reasonable efforts to . . . reunify the child with the parent unless the court finds in the proceeding that the parent is unable or unwilling to benefit from reunification efforts.' General Statutes [Rev. to 1999] § 17a-112 (c) (1). The court need not make such a finding, however, 'if a court has determined at a hearing pursuant to subsection (b) of § 17a-110 or § 17a-111b that such efforts are not appropriate . . . .' [General Statutes (Rev. to 1999) § 17a-112 (c) (1)]. The court made the requisite finding on July 16, 1998, and August 30, 1999, that reunification efforts were no longer appropriate with regard to the [respondent]."

The findings to which Judge Rogers referred were made in the context of extension of commitment proceedings held before the court, *Cohn, J.*, on July 16, 1998, and before the court, *Dewey, J.*, on August 30, 1999. Facts concerning the August 30, 1999 hearing before Judge Dewey are sufficient to address the respondent's claim. The following colloquy took place between counsel and Judge Dewey on August 30, 1999:

"The Court: All right, then absent objection, and is there any objection to the motion for extension being granted?

"[Respondent's Counsel]: No.

"The Court: Then absent objection, the extension is granted until August 15, 2000.

\* \* \*

"The Court: State, is there anything further you need?

"[Assistant Attorney General]: Your Honor, we would ask that . . . further efforts for reunification with the mother and father are no longer necessary.

"The Court: There's no objection to that, correct?

"[Child's Counsel]: Not for the child's attorney, Your Honor.

"[Respondent's Counsel]: No.

"The Court: Ordered.

"[Respondent's Counsel]: Thank you."

On August 30, 1999, Judge Dewey extended the child's commitment and signed an order for review of the permanency plan that stated in relevant part: "Upon review of the petitioner's motion for review of permanency plan for extension of commitment and the corresponding study attached thereto, upon hearing the parties and the evidence presented, and upon considering the best interest of the above-named [child], including the [child's] need for permanency, the court hereby makes the following findings by *clear and convincing evidence* and orders in accordance with [General Statutes] § 46b-129 [k] (1), (2) and (3): It . . . is *not appropriate to continue to make reasonable efforts to reunify the [child]* with the above-named respondent(s). The commissioner of the department of children and families has no duty to make further efforts to reunify the [child] with the respondent(s)." (Emphasis added.)

Thereafter, at the beginning of the hearing on the petition to terminate the respondent's parental rights, the following colloquy took place between Judge Rogers and counsel for the parties:

"The Court: The court also found that further efforts to reunify were not appropriate on August 30, 1999, and apparently [on] July 16, 1998. So that it's the court's understanding that that finding need not be made again. Is that the parties' understanding at this time?

"[Assistant Attorney General]: Yes, it is, Your Honor.

"The Court: Mr. Rosado [respondent's counsel]?

"[Respondent's Counsel]: What date did Your Honor state?

"The Court: I got two dates. Judge Dewey made the finding on August 30, 1999, and Judge Cohn made the finding on July 16, 1998, is what the record reflects.

"[Respondent's Counsel]: I dispute the '98 finding. As to the '99 finding; yes, with Judge Dewey.

"The Court: All right, I think I just need one."

The language of § 17a-112 (c) controls the respondent's claim. "The purpose of statutory construction is to give effect to the intended purpose of the legislature. . . . If the language of a statute is plain and unambiguous, we need look no further than the words actually used because we assume that the language expresses the legislature's intent." (Citations omitted; internal quotation marks omitted.) *State* v. *DeFrancesco*, 235 Conn. 426, 435, 668 A.2d 348 (1995). "Common sense must be used [when construing statutes] and courts will assume that the legislature intended to accomplish a reasonable and rational result. . . . We must presume that each sentence, clause and phrase in a public act has a purpose and that the legislature did not intend to enact a meaningless law." (Citation omitted.) *Candlewood Landing Condominium Assn., Inc.* v. *New Milford*, 44 Conn. App. 107, 110, 686 A.2d 1007 (1997).

Section 17a-112 (c) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to . . . reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided *such finding is not required if the court has determined at a hearing pur-*

*suant to subsection (b) of section 17a-110 . . . that such efforts are not appropriate . . . ."* (Emphasis added.)

Judge Rogers concluded, and the record supports her conclusion, that at the August 30, 1999 extension of commitment hearing, Judge Dewey found by clear and convincing evidence that it was not appropriate for the department to continue to make reasonable efforts to reunify the child and the respondent. The language of § 17a-112 (c) is clear: A finding that it is no longer appropriate for the department to make reasonable efforts to reunite the family must be made only once, either at an extension hearing or at a termination hearing. Common sense also tells us that it would be a waste of judicial resources to require courts to make redundant findings.

### C

The respondent also argues that Judge Rogers' reliance on the previous determinations that reunification efforts were not appropriate was improper because those decisions were not supported by clear and convincing evidence. As the petitioner points out, the respondent failed to appeal from Judge Dewey's order of August 30, 1999, extending the child's commitment and finding that reunification efforts were no longer appropriate. An extension of commitment is an immediately appealable final judgment. *In re Todd G.*, 49 Conn. App. 361, 362, 713 A.2d 1286 (1998). The issue may not be raised as a collateral attack on the judgment terminating parental rights. See *In re Shamika F.*, 256 Conn. 383, 405–408, 773 A.2d 347 (2001). We conclude that this part of the respondent's claim is not reviewable.[8]

[8] Although this portion of the respondent's claim is not reviewable on the merits, we cannot ignore the record on which this claim is based. At the extension hearing, the respondent's counsel agreed with Judge Dewey's finding that the department no longer had to make reasonable efforts to unite the child and the respondent. Our appellate courts frequently have

The respondent also argues that the termination was improper because Judge Rogers herself did not make a finding by clear and convincing evidence as to reasonable efforts. The statute tells us that Judge Rogers did not have to make the finding herself because Judge Dewey previously did so at the extension of commitment hearing. Any court adjudicating the termination petition was entitled to rely on Judge Dewey's finding. The respondent's claim thus is without merit.

## II

The respondent's second claim is that the court improperly concluded that she had failed to achieve personal rehabilitation within the meaning of § 17a-112 (c) (3) (B). We decline to review this claim because it is inadequately briefed. With respect to this issue, the respondent's brief consists of a one paragraph factual argument based on reasonableness. The respondent failed to cite the applicable standard of review, and the brief contains no legal authority or analysis to support her theory. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We will not review claims absent law and analysis." (Citation omitted; internal quotation marks omitted.) *In re Dorrell R.*, 64 Conn. App. 455, 469, 780 A.2d 944 (2001).

## III

The respondent's last claim is that § 17a-110 is unconstitutional in that it permits the court to find a statutory ground for termination by less than clear and convinc-

stated that a party "may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him." (Internal quotation marks omitted.) *State* v. *Barber*, 64 Conn. App. 659, 670, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001).

ing evidence. The respondent cannot prevail on this claim because it was not raised at trial and fails to satisfy all four prongs of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). See *In re Alexander V.*, 25 Conn. App. 741, 743, 596 A.2d 934 (1991), aff'd, 223 Conn. 557, 613 A.2d 780 (1992).

The respondent can prevail on her constitutional claim only if "*all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the . . . claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

Although the record is adequate for our review, we need not determine whether the respondent's claim is of constitutional magnitude. Even if it were, the alleged violation did not clearly exist and deprive the respondent of a fair trial. Judge Dewey conducted a hearing and found by clear and convincing evidence that it was no longer appropriate for the department to make reasonable efforts to reunite the family, a finding on which Judge Rogers was entitled to rely. See part I of this opinion.

The judgment is affirmed.

In this opinion the other judges concurred.