# IN RE VICTORIA B.*
## (AC 23174)

Lavery, C. J., and West and DiPentima, Js.

Argued May 28—officially released September 2, 2003

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David B. Rozwaski*, for the appellant (respondent mother).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman* and *Tracey Hammer*, assistant attorneys general, for the appellee (petitioner).

*Carrie B. Taylor*, for the minor child.

*Opinion*

DiPENTIMA, J. The respondent mother[1] appeals from the judgment of the trial court terminating her parental rights with respect to her minor child. On appeal, the respondent claims that the court improperly determined that (1) she had failed to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B)[2] and (2) it was in the

[1] The identity of the biological father has not been ascertained. Paternity testing ruled out an individual named by the respondent mother as being the father. Notice of the proceedings to the child's unknown biological father, John Doe, was effected by publication in a newspaper of general circulation; however, a default ultimately was entered against him. The trial court thereafter terminated the parental rights of John Doe as to the child. No appeal has been filed on behalf of John Doe. We therefore refer in this opinion to the respondent mother as the respondent.

[2] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence . . . (3) that . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

best interest of the child to terminate the respondent's parental rights. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the respondent's appeal. The child was born on April 25, 1997. On January 28, 2000, the commissioner of children and families (commissioner) invoked a ninety-six hour hold on the child[3] and on February 1, 2000, secured an order of temporary custody on the ground that the child was in immediate physical danger from her surroundings. A concomitant neglect petition was filed, alleging that the child was neglected in that (1) she was being denied proper care and attention physically, educationally, emotionally or morally, and (2) she was being permitted to live under conditions, circumstances or associations injurious to her well-being. On February 10, 2000, the order of temporary custody was confirmed by the court, and preliminary specific steps were agreed to by the respondent and approved by the court. On September 5, 2000, the respondent entered an admission to an amended ground that the child was "uncared for." The respondent was canvassed, and the admission was accepted by the court. The disposition resulted in the commitment of the child to the commissioner from September 5, 2000, to September 5, 2001. Also on September 5, 2000, final specific steps were signed by the respondent and approved by the court.

On May 2, 2001, the commissioner filed a petition to terminate the respondent's parental rights, alleging two grounds for termination: (1) the child had been found in a prior proceeding to have been neglected and uncared for, and the respondent failed to achieve such

[3] Upon removal from the respondent's care on January 28, 2000, the child was placed in a foster home where she has remained throughout the proceedings underlying this appeal.

a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, that the respondent could assume a responsible position in the child's life, and (2) there was no ongoing parent-child relationship between the respondent and the child. On August 1, 2001, a finding was made that reasonable efforts to reunify the respondent and the child were no longer appropriate.[4]

The termination of parental rights hearing was held on October 9 and 30, November 20 and December 11, 2001, and concluded on January 29, 2002. The respondent opposed the termination of her parental rights and was represented by counsel throughout the proceedings, as was the child.[5] During the adjudicatory phase of the proceedings, the court found that the commissioner had proven one of the two grounds alleged for termination. Specifically, the court found that the commissioner had proved by clear and convincing evidence that the respondent had "failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, [the respondent] could assume a responsible position in the life of [the child]."[6] See Gen-

[4] The finding that further reunification efforts were not appropriate was made at a hearing on the commissioner's motion to extend the child's commitment and to review a permanency plan pursuant to General Statutes § 46b-129 (k). On August 1, 2001, the commitment of the child to the commissioner was extended from September 5, 2001, to September 5, 2002.

[5] The child has been represented by counsel since her initial placement with the commissioner in January, 2000, and throughout the proceedings in the trial court and on appeal. On appeal, the child's attorney adopted the commissioner's brief and was heard at oral argument.

[6] The court also found that clear and convincing evidence established that the department of children and families had made reasonable efforts to reunify the child with the respondent. Specifically, the court reviewed the department's efforts to reunify the child with the respondent, listing the agencies, programs and services identified by the department to engage the respondent and to address her mental health, domestic violence, anger management, substance abuse and parenting issues. The court found that the respondent had been provided with case management services, including

eral Statutes § 17a-112 (j) (3) (B). With respect to the second ground, however, the court determined that "while [the respondent] and [the child] have far from a perfect parent-child relationship, [the commissioner] failed to maintain [her] burden of proof on the ground of no parent-child relationship existing between [the child] and [the respondent]." See General Statutes § 17a-112 (j) (3) (D).[7]

In the dispositional phase of the proceedings, the court considered and made written findings regarding the seven factors listed in § 17a-112 (k). The court recognized that the respondent had "made strides in addressing her problems,"[8] but determined that clear and convincing evidence established that termination of her parental rights was in the best interest of the child. Consequently, on April 30, 2002, the court granted the petition to terminate the respondent's parental

visitation with the child and transportation to visitation and to service providers. The court found further that the respondent had failed to follow through with several referrals and their recommendations or had been discharged for noncompliance. The court then found, by clear and convincing evidence, that the department had made reasonable efforts to reunify the child with the respondent. See General Statutes § 17a-112 (j) (1).

[7] General Statutes § 17a-112 (j) (3) (D) provides that the court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

[8] The court addressed what it considered to be "a troubling aspect of this case." The court stated: "[The respondent] has made progress in treating her mental health needs and has stabilized her life in many ways—she has gotten her [general equivalency diploma] and is attending . . . college, she has entered into a stable relationship which has resulted in marriage and she has stable housing. She has made strides in addressing her problems. It troubles [the] court greatly that a decision to grant the [petition] may adversely affect the seeming progress that [the respondent] has made. However, the focus . . . is not the effect that granting the [petition] may have on [the respondent], but what is in the best interest of [the child]."

rights.[9] This appeal followed. Additional facts will be set forth as necessary.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Brea B.*, 75 Conn. App. 466, 469–70, 816 A.2d 707 (2003).

I

The respondent's first claim is that the court improperly found that the commissioner had proved by clear

[9] On June 7, 2002, the respondent filed a motion to open the judgment and to allow for the presentation of new evidence concerning, inter alia, her treatment, progress and ability to parent the child. On July 15, 2002, the court denied the motion. The respondent did not file an amended appeal.

and convincing evidence that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time she could assume a responsible position in the life of her child. The respondent asserts that the evidence presented supports a finding that she had been making efforts to rehabilitate herself and that she could assume a role of responsibility for the care of her child within the foreseeable future. Both the commissioner and the child's attorney maintain that the court's conclusion that the respondent had failed to achieve a sufficient degree of rehabilitation within the meaning of § 17a-112 (j) is legally correct and factually supported by the record.

"On appeal, we review a trial court's finding that a parent has failed to rehabilitate herself in accordance with the rules that apply generally to a trier's finding of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Jennifer W.*, 75 Conn. App. 485, 498–99, 816 A.2d 697, cert. denied, 263 Conn. 917, 821 A.2d 770 (2003).

Here, the court determined that there was a statutory basis, § 17a-112 (j) (3) (B), for terminating the respondent's parental rights because she had failed to achieve personal rehabilitation to such a degree as to be able to assume a responsible position in her child's life. "Personal rehabilitation refers to the reasonable foreseeability of the restoration of a parent to his or her former constructive and useful role as a parent, not merely the ability to manage his or her own life." (Internal quotation marks omitted.) Id., 494.

In considering whether the respondent had failed to achieve the requisite degree of personal rehabilitation within the meaning of § 17a-112 (j) (3) (B), the court undertook a bifurcated analysis in which it first sought to determine whether she had achieved such rehabilitation by the time of the filing of the petition in May, 2001, and second, if not, whether her rehabilitation was foreseeable within a reasonable period of time. The court determined that the respondent had failed to achieve the requisite degree of personal rehabilitation because she failed to engage in the services recommended by the commissioner and did not comply with the final specific steps requested to facilitate the return of the child to her care. Specifically, the court found that the respondent had failed to engage in various mental health programs recommended by the commissioner and had failed to comply with the final specific steps that she had agreed to take on September 5, 2000, in that she had not successfully completed counseling programs or maintained adequate housing, legal income or employment, and that she had been involved with the criminal justice system for motor vehicle offenses.

Consequently, the court proceeded to determine whether the respondent's rehabilitation was foreseeable within a reasonable amount of time so that she could assume a responsible position in the life of her child. In analyzing that question, the court examined the testimony of mental health professionals and the other evidence presented by the parties.[10] The court

[10] Specifically, the court considered the evidence in light of the following factors: The nature of the respondent's mental health problems; the effect of those problems on her ability to parent the child; any problems associated with treating individuals with the respondent's mental conditions; the progress made by the respondent in addressing her mental health problems to and after August, 2001; the length of time that would be required before the respondent would be in a position to parent the child; the extent to which the termination petition motivated the respondent; and the respondent's prognosis.

The court found that the respondent suffered from borderline personality disorder, bipolar disorder and posttraumatic stress disorder; the depth and

summarized its findings and conclusion as follows: "Given the number and seriousness of mental health conditions of [the respondent] and their effect on her ability to parent [the child], the difficulty in treating these conditions, [the respondent's] lack of insight into these conditions and her failure to take advantage of programs offered to address these conditions prior to August, 2001, the fact that [the respondent's] progress since August, 2001, may be only temporary, the fact that possibly the only reason for the treatment is the pending [petition to terminate parental rights], the possible time required for treatment and the unsure prognosis that the treatment will be effective, [the] court concludes that [the respondent] cannot achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child." The court, therefore, determined that the commissioner had proven by clear and convincing evidence that there was a statutory ground for terminating the respondent's parental rights in accordance with § 17a-112 (j) (3) (B).

The respondent correctly asserts that rehabilitation does not require that a parent be able to assume the full responsibility for a child without the use of available support programs such as those recommended by the petitioner. See *In re Jennifer W.*, supra, 75 Conn. App.

seriousness of her conditions had negatively impacted her parenting abilities; such conditions could be very resistant to treatment; prior to August, 2001, she had not addressed her mental health problems sufficiently; since August, 2001, although she had gained some insight into her problems and her lifestyle had improved, her progress was to be viewed critically, given the changeable moods she still demonstrated, and the high and low periods generally associated with her conditions; a significant amount of time and treatment would be required before she might be in a position to parent the child; and, although the respondent was receiving appropriate treatment during the pendency of the petition to terminate her parental rights, there was concern as to whether her motivation and progress would continue if the threat of the petition was removed.

499; see also *In re Luis C.*, 210 Conn. 157, 167, 554 A.2d 722 (1989); *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). The respondent argues that the court ignored the significant strides that she had made in stabilizing her life and addressing her mental health problems, and the positive interactions she had had with the child during telephone calls and visits. The court, however, properly made an inquiry into the full history of the respondent's parenting abilities. See *In re Jennifer W.*, supra, 499; *In re Galen F.*, 54 Conn. App. 590, 594, 737 A.2d 499 (1999).

"[T]he adjudicatory determination to be made by the trial court is whether the parent of a child who has been found by the [S]uperior [C]ourt to have been neglected [or] uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. . . . In conducting this inquiry, the trial court must analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . . The trial court must also determine whether the prospects for rehabilitation can be realized within a reasonable time given the age and needs of the child." (Internal quotation marks omitted.) *In re Jennifer W.*, supra, 75 Conn. App. 499–500. "What constitutes a reasonable time is a factual determination that must be made on a case-by-case basis." *In re Stanley D.*, 61 Conn. App. 224, 231, 763 A.2d 83 (2000); *In re Michael L.*, 56 Conn. App. 688, 694, 745 A.2d 847 (2000).

"Although the standard is not full rehabilitation, the parent must show more than 'any' rehabilitation. . . . Successful completion of the petitioner's expressly articulated expectations is not sufficient to defeat the petitioner's claim that the parent has not achieved suffi-

cient rehabilitation." (Citations omitted.) *In re Jennifer W.*, supra, 75 Conn. App. 500. "[I]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child at issue." (Internal quotation marks omitted.) *In re Amneris P.*, 66 Conn. App. 377, 384, 784 A.2d 457 (2001). Thus, even if a parent has made successful strides in her ability to manage her life and may have achieved a level of stability within her limitations, such improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, she could assume a responsible position in the life of her child. See, e.g., *In re Eden F.*, 250 Conn. 674, 699–708, 741 A.2d 873 (1999); *In re Jennifer W.*, supra, 498–500; *In re Amneris P.*, supra, 383–85; *In re Sheila J.*, 62 Conn. App. 470, 479–82, 771 A.2d 244 (2001); *In re Mariah S.*, 61 Conn. App. 248, 260–67, 763 A.2d 71 (2000), cert. denied, 255 Conn. 934, 767 A.2d 104 (2001).

Our review of the record reveals that the evidence credited by the court supports its conclusion that the respondent had failed to attain a degree of rehabilitation sufficient to warrant the belief that within a reasonable period of time, she would be capable of assuming a responsible position with respect to the child. The court reasonably relied on the testimony of mental health experts regarding the depth and seriousness of the respondent's mental health problems and the uncertainty they expressed as to how long it could take before she *might* be in a position to parent the child. See *In re Tabitha P.*, 39 Conn. App. 353, 365 n.8, 664 A.2d 1168 (1995) (courts entitled to give great weight to testimony from professionals in termination of parental rights cases).

Although the respondent has made successful strides in her ability to manage her life and has achieved a

level of stability within her limitations, the court had ample evidence to support its finding that her personal gains were not made in a timely way, nor were they sufficiently reliable so as to assist her child. The court had reasonable concerns that the degree of the rehabilitation the respondent had achieved was not enough for her to assume a responsible position in her child's life. We conclude that the court's finding, by clear and convincing evidence, that the respondent had failed to achieve such a degree of rehabilitation as would encourage the belief that within a reasonable period of time she could assume a responsible position in the child's life was not clearly erroneous.[11]

## II

Next, the respondent claims that the court improperly determined that the seven statutory factors of § 17a-112 (k) all weighed in favor of the termination of her parental rights and that termination was in the best interest of the child. In response, both the commissioner and the child's attorney maintain that the court's finding that termination of parental rights was in the child's

---

[11] We reject the respondent's additional argument that the court's finding regarding rehabilitation was inconsistent with its finding regarding the existence of a parent-child relationship. In so arguing, the respondent refers to the portion of the court's memorandum of decision in which the court determined that the commissioner had failed to maintain her burden of proof on the other statutory ground alleged under General Statutes § 17a-112 (j) (D) of no ongoing parent-child relationship existing between the respondent and child.

"Because the statutory grounds necessary to grant a petition for termination of parental rights are expressed in the disjunctive, the court need find only one ground to grant the petition. Thus, we may affirm the court's decision if we find that it properly concluded that any one of the statutory circumstances existed." In re Brea B., supra, 75 Conn. App. 473, citing In re Alexander C., 67 Conn. App. 417, 427, 787 A.2d 608 (2001), aff'd, 262 Conn. 308, 813 A.2d 87 (2003). Because we have determined that the court properly concluded that the statutory ground of failure to achieve sufficient rehabilitation had been established in accordance with § 17a-112 (j) (3) (B), the respondent's argument must fail.

best interest is legally correct and factually supported by the record.[12]

The respondent first attacks the court's findings and conclusions in the adjudicatory phase concerning reunification. See General Statutes § 17a-112 (j). She then challenges the court's findings in the dispositional phase concerning reunification as part of its determination of the best interest of the child. See General Statutes § 17a-112 (k) (1) and (2).

There is a distinction between a finding on reasonable reunification efforts under § 17a-112 (j) and consideration of the same under § 17a-112 (k). Section 17a-112 (j) (1) requires the court to make a finding by clear and convincing evidence in the adjudicatory phase concerning the reasonable efforts made by the department of children and families (department) to reunify the child with the parent as a prerequisite to terminating parental rights.[13] See *In re Vincent B.*, 73 Conn. App. 637, 640, 809 A.2d 1119 (2002), cert. denied, 262 Conn. 934, 815 A.2d 136 (2003); *In re Ebony H.*, 68 Conn. App. 342,

[12] At oral argument before this court, the child's attorney discussed the best interest of the child. She explained that as the child's attorney, her responsibilities have been twofold: First, to act as the child's voice in court proceedings and second, to make sure that her client's best interest is considered. With respect to the first responsibility, the child's attorney represented to us that the child's clear desire is to remain with the foster family with whom she has resided since her initial placement with the department in January, 2000. With respect to her second responsibility, after careful consideration of several factors, the child's attorney agrees with the court that it is in the child's best interest to remain with the foster family and to be made available for adoption as soon as possible.

[13] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b that such efforts are not appropriate . . . ."

348, 789 A.2d 1158 (2002). "A court need not make that finding, however, if the evidence establishes that the parent is unable or unwilling to benefit from reunification efforts or if the court determines at a hearing pursuant to General Statutes § 17a-110 (b) or General Statutes § 17a-111b that such efforts are inappropriate." *In re Gary B.*, 66 Conn. App. 286, 290, 784 A.2d 412 (2001), citing General Statutes § 17a-112 (j) (1).

By contrast, section 17a-112 (k) requires the court in the dispositional phase to make written findings regarding seven statutory factors, including "[t]he timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent" and whether the department "has made reasonable efforts to reunite the family . . . ."[14] General Statutes

[14] General Statutes § 17a-112 (k) provides in relevant part: "[I]n determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

§ 17a-112 (k) (1) and (2). The factors, however, serve simply as guidelines to assist the court in its determination of the child's best interest, and each factor need not be proven by clear and convincing evidence. See *In re Quanitra M.*, 60 Conn. App. 96, 104–105, 758 A.2d 863, cert. denied, 255 Conn. 903, 762 A.2d 909 (2000).

In the present case, the court was mindful of the distinction between § 17a-112 (j) (1) and (k) (1) and (2), as its memorandum of decision contains separate discussions concerning reunification efforts under each subsection. In its discussion of reunification in the adjudicatory phase under § 17a-112 (j) (1), the court stated that "[r]easonable efforts to reunify [the child] with [the respondent] were deemed no longer appropriate on August 1, 2001." The court was not required to make another finding as to the department's reunification efforts because the court had determined at a prior hearing pursuant to § 17a-110 that such efforts were not appropriate.[15] See *In re Gary B.*, supra, 66 Conn. App. 290–91. Notwithstanding, we note that in the adjudicatory phase, the court proceeded to review the department's efforts to reunify the child with the respondent. See footnote 7. The court found by clear and convincing evidence that the department had made reasonable efforts to reunify the child with the respondent. See General Statutes § 17a-112 (j) (1).

[15] Specifically, the court's prior determination had been made at a hearing pursuant to General Statutes § 46b-129 (k) extending the child's commitment and finding that reunification efforts were no longer appropriate. See footnote 5. Such a hearing pursuant to § 46b-129 (k) is one that may be held in accordance with General Statutes § 17a-110 (b), and the concomitant finding regarding the inappropriateness of further reunification efforts satisfies the express requirements of General Statutes § 17a-112 (j) (1).

Moreover, a decision following a hearing pursuant to § 46b-129 (k), extending commitment and finding that further reunification efforts are not appropriate is an immediately appealable final judgment, and the issue of reunification cannot be raised as a collateral attack on a judgment terminating parental rights. See *In re Kachainy C.*, 67 Conn. App. 401, 412, 787 A.2d 592 (2001). Because the respondent failed to file an appeal from the court's prior order of August 1, 2001, that part of her claim is not reviewable. See id.

Thereafter, in the dispositional phase, the court separately considered the timeliness of and the nature and extent of services offered, provided and made available to facilitate the reunion of the child with the respondent, and whether the department had made reasonable reunification efforts. See General Statutes § 17a-112 (k) (1) and (2). The court determined that the department had offered appropriate services and sufficient time for reunification of the respondent with the child, that the respondent had not taken advantage of the services offered and that, despite her recent progress, given the nature and severity of her mental health problems and the uncertain prognosis for her achieving stable mental health, it was unreasonable to conclude that she would be able to parent the child effectively within a reasonable amount of time. We cannot conclude that the court's adjudicatory or dispositional findings and conclusions regarding reasonable reunification efforts were either legally incorrect or not factually supported.

In the remainder of the respondent's second claim, she does not challenge the court's findings on the factors enumerated in § 17a-112 (k) as being factually unsupported by the record. Instead, she asserts that the court could have or should have made other findings, which, in her view, would demonstrate that in light of the totality of the circumstances of this case, it was not in the best interest of the child to terminate the respondent's parental rights. Specifically, the respondent focuses on the evidence indicating her desire for reunification and need for additional time, and the parent-child bond existing between her and the child. She contends that the court placed an inappropriate emphasis on the relationship existing between the child and the foster parents with whom the child has resided,[16] and on selective portions of the testimony elicited from the experts at trial.

[16] See footnote 3.

In the dispositional phase of a termination of parental rights hearing, "the emphasis appropriately shifts from the conduct of the parent to the best interest of the child." *In re Romance M.*, 229 Conn. 345, 356–57, 641 A.2d 378 (1994). "In the dispositional phase . . . the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in § 17a-112 [k]." (Internal quotation marks omitted.) *In re Clark K.*, 70 Conn. App. 665, 677, 799 A.2d 1099, cert. denied, 261 Conn. 925, 806 A.2d 1059 (2002). The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. *In re Quanitra M.*, supra, 60 Conn. App. 104–105. There is no requirement that each factor be proven by clear and convincing evidence. Id., 104.

In the present case, the court determined that the seven statutory factors weighed in favor of the termination of the respondent's parental rights, and the court's analysis of the child's best interest properly focused on the child's positive and significant improvements since her placement with a foster family. Although the court acknowledged the existence of a parent-child bond between the respondent and child and the progress made by the respondent in treating her mental health problems and stabilizing her life,[17] the court also relied on evidence showing that the child had thrived and fit in well with the foster family and viewed her foster parents as her psychological parents. The court noted that the child, then five years old, was described by witnesses as a bright child, and the court considered her express wish and desire to live with the foster parents and not with the respondent. The court relied

---

[17] See footnote 8.

on certain statements made by the respondent supporting the continuation of care or the adoption of the child by the foster parents.

Finally, the court relied on the opinion of Derek A. Franklin, an expert in adult and child psychology,[18] who testified that the decision regarding the child's permanency should be pursued with some immediacy, given that at the time of the court's decision, the child had been in the custody of the commissioner for twenty-seven months. The court found that returning the child to the respondent would be detrimental to the child and that the child was emotionally equipped to adjust to any loss she might feel due to a termination of parental rights. The court further relied on and agreed with Franklin's opinion that the child's emotional stability, developmental needs and best interests would be served by remaining with the foster parents, who had expressed their intent to adopt her if she became available for adoption, and by terminating the respondent's parental rights. The court's findings and conclusion are legally correct and supported by the record.

The respondent argues that the court ignored or undervalued other evidence that indicates that termination of her parental rights was not in the child's best interest. "Our function as an appellate court is to review and not retry the proceeding of the trial court. . . . The probative force of conflicting evidence is for the trier to determine." (Citation omitted.) *In re Ashley E.*, 62 Conn. App. 307, 316, 771 A.2d 160, cert. denied, 256 Conn. 910, 772 A.2d 601 (2001). "We defer to the trier of fact's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. The trier is the judge of the

---

[18] Franklin performed two court-ordered evaluations of the respondent and interactive assessments of the respondent, the child and the foster parents.

credibility of all the witnesses and the weight to be given their testimony, and may accept part, all or none of the testimony. . . . Where, as here, the record reveals that the trial court's ultimate conclusions are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any one segment of the many factors considered in a termination proceeding." (Citation omitted; internal quotation marks omitted.) Id.

In its thorough and thoughtful decision, the court found by clear and convincing evidence that the child's best interest would be served by granting the petition to terminate the respondent's parental rights. In support of that finding, the court noted that much of the child's short life had been spent in the custody of the commissioner and that the child needed stability and permanency in her life. We conclude that the court's findings and conclusions are not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.