# IN RE JAVON R.*
## (AC 24247)

Foti, Dranginis and Flynn, Js.

Argued September 9—officially released November 2, 2004

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Arnold V. Amore II*, for the appellant (respondent mother).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

FLYNN, J. The respondent mother[1] appeals from the March 31, 2003 judgment of the trial court terminating her parental rights with respect to her son. On appeal, the respondent claims that (1) the court improperly found that the department of children and families (department) had made reasonable efforts to provide services to her to enable her to reunify with her son and (2) the department discriminated against her on the basis of her mental retardation, in violation of her rights to equal protection under the Connecticut constitution, by not providing enhanced services to enable her to reunite with the child. We affirm the judgment of the trial court.

The record reveals the following relevant procedural history and facts. The respondent is a forty year old woman with multiple diagnoses of mental retardation, mental illness and substance abuse. She also has had to resort to living in various shelters due to instances of domestic violence. The respondent is the mother of four children, three of whom previously were adjudicated neglected. The fourth child, who is the subject of this appeal, was born on January 25, 1999, while the respondent resided in a residential program that provides supervision and treatment for people with a

---

[1] The petitioner, the commissioner of the department of children and families, also sought to terminate the parental rights of the child's father. He consented to the termination of his parental rights and is not a party to this appeal. We therefore refer in this opinion to the respondent mother as the respondent.

dual diagnosis of mental illness and substance abuse. Shortly thereafter, the department received multiple reports from various service providers that the child was not being cared for properly by the respondent. In response to those reports, the commissioner of the department filed a petition on April 7, 1999, in the Superior Court, alleging that the child had been neglected, and the department offered and attempted to provide services to the respondent to help her with the child. Nevertheless, in May, 1999, after receiving more reports concerning the child's safety, the commissioner of the department invoked a ninety-six hour hold and applied for an order of temporary custody, which was granted by the court, *Cohn, J.*, ex parte.

In the months and years that followed, the department made many attempts to provide additional services and resources to the respondent in an attempt to reunify her with her son. On August 7, 2001, however, the commissioner filed a petition for termination of parental rights. Acting on the commissioner's motion to review the permanency plan, the court, *Conway, J.*, in a decision dated May 14, 2002, found by clear and convincing evidence that continued efforts to reunify the child with his mother were not appropriate and that it was in the child's best interest to maintain the commitment.[2] The court also approved adoption as the

[2] See General Statutes § 46b-129 (k), which provides in relevant part: "(1) Nine months after placement of the child . . . in the care and custody of the commissioner . . . the commissioner shall file a motion for review of a permanency plan and to maintain or revoke the commitment. Nine months after a permanency plan has been approved by the court pursuant to this subsection, the commissioner shall file a motion for review of the permanency plan and to maintain or revoke the commitment. Any party seeking to oppose the commissioner's permanency plan or the maintaining or revocation of commitment shall file a motion in opposition within thirty days after the filing of the commissioner's motion for review of the permanency plan and to maintain or revoke commitment. A permanency hearing on any motion for review of the permanency plan and to maintain or revoke commitment shall be held within ninety days of the filing of such motion. The court shall hold evidentiary hearings in connection with any contested motion

goal of the permanency plan.[3] The termination trial was held in June and September, 2002, and, the court, *Lopez, J.*, issued its decision granting the petition to terminate the respondent's parental rights on March 31, 2003. This appeal followed.

"The standard of review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility

for review of the permanency plan and to maintain or revoke commitment. The burden of proof shall be upon the commissioner to establish that the commitment should be maintained. . . . The court shall provide notice to the child . . . and the parent or guardian of such child . . . of the time and place of the court hearing on any such motion not less than fourteen days prior to such hearing.

"(2) At a permanency hearing held in accordance with the provisions of subdivision (1) of this subsection, the court shall determine whether it is appropriate to continue to make reasonable efforts to reunify the child . . . with the parent . . . . In making this determination, the court shall consider the best interests of the child, including the child's need for permanency. If the court finds upon clear and convincing evidence that further efforts are not appropriate, the commissioner has no duty to make further efforts to reunify the child . . . with the parent. . . .

"(3) At a permanency hearing held in accordance with the provisions of subdivision (1) of this subsection, the court shall approve a permanency plan that is in the best interests of the child . . . and takes into consideration the child's . . . need for permanency. The child's . . . health and safety shall be of paramount concern in formulating such plan. Such permanency plan may include the goal of . . . (D) adoption and filing of termination of parental rights . . . ."

[3] The child, now five years old, has been in foster care with the same foster mother since he was four months old.

of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Clark K.*, 70 Conn. App. 665, 668–69, 799 A.2d 1099, cert. denied, 261 Conn. 925, 806 A.2d 1059 (2002).

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights . . . exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the parents' parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in General Statutes . . . § [17a-112 (k) ] . . . ." (Internal quotation marks omitted.) *In re Vanna A.*, 83 Conn. App. 17, 21–22, 847 A.2d 1073 (2004).

On appeal, the respondent claims that the court improperly concluded that the department had made reasonable efforts to provide services to her to assist with her efforts to reunify with the child. She also claims that the department discriminated against her on the basis of her mental retardation in violation of her rights to equal protection under the Connecticut constitution by not providing the necessary services to ensure her ability to reunite with the child. The commissioner argues, however, that the judgment of the trial court must be affirmed because the respondent failed to

appeal from the court's earlier findings, contained in the permanency plan order and review, dated May 14, 2002, in which the court specifically found, by clear and convincing evidence, that continued efforts to reunify Jovan with his mother were not appropriate and that it was in the child's best interest to maintain the commitment.[4] We agree with the commissioner.

"[A] decision following a hearing pursuant to § 46b-129 (k), extending commitment and finding that further reunification efforts are not appropriate is an immediately appealable final judgment, and the issue of reunification cannot be raised as a collateral attack on a judgment terminating parental rights." *In re Victoria B.*, 79 Conn. App. 245, 259 n.15, 829 A.2d 855 (2003). "[A]n immediate appeal of [a court order of temporary custody] is the only reasonable method of ensuring that the important rights surrounding the parent-child relationship are adequately protected. . . . As [our Supreme Court] pointed out in [*Madigan* v. *Madigan*, 224 Conn. 749, 757 n.9, 620 A.2d 1276 (1993)] several of our sister states have come to the same conclusion. . . . Accordingly, we conclude that, in order to protect the parent's interest in retaining custody of the child, an order [concerning] temporary custody is a final judgment for purposes of appeal. That reasoning means, moreover, that any party with standing to challenge that order by appeal must do so at that time." (Citations

---

[4] In the alternative, the commissioner argues that the judgment must be affirmed because the respondent does not challenge the trial court's findings that she is unable and unwilling to benefit from reunification efforts, that she has failed to achieve a sufficient degree of rehabilitation, that there is no ongoing parent-child relationship and that it is in the best interest of the child to terminate the respondent's parental rights. Accordingly, the commissioner argues, even if this court concluded that the respondent was correct in her claims, the decision of the trial court still must be upheld because the respondent does not challenge the findings concerning these statutory grounds for termination. See *In re Victoria B.*, 79 Conn. App. 245, 829 A.2d 855 (2003).

omitted; internal quotation marks omitted.) *In re Shamika F.*, 256 Conn. 383, 404–405, 773 A.2d 347 (2001).

In the present case, the court discussed the issue of the reasonable efforts at reunification required of the department by General Statutes § 17a-112 (j) (1) in the adjudicatory section of its memorandum of decision, in which the court took judicial notice of Judge Conway's earlier finding[5] that further efforts to reunify were no longer necessary. Although the court was not required to make additional findings as to reunification, it did, in fact, review the department's efforts to reunify the child with the respondent and found, by clear and convincing evidence, that the department had made reasonable efforts toward reunification and that the respondent was unwilling and unable to benefit from services. The court made similar findings at the dispositional phase of the termination hearing and concluded, "based upon the clear and convincing evidence presented," that it would be in the child's best interest to terminate the parental rights of his mother.

The respondent now seeks to challenge the court's decision terminating her parental rights, claiming that efforts at reunification were insufficient in her case because of her heightened needs as a mentally retarded person. However, because the respondent failed to file an appeal from the court's prior finding and order, dated May 14, 2002, in which the court specifically found that further efforts at reunification were not warranted, that claim is not now reviewable.[6] See *In re Shamika F.*,

[5] The court states that this finding was made on May 22, 2002. We note, however, that the date of the decision was May 14, 2002.

[6] The respondent claimed at oral argument before this court that her filing of a motion to revoke commitment on June 17, 2002, after the running of the appeal period, somehow relieved her of the obligation to appeal from the court's May 14, 2002 findings. Because that issue was neither briefed nor thoroughly argued, we decline to afford it review. See *Best Friends Pet Care, Inc.* v. *Design Learned, Inc.*, 77 Conn. App. 167, 181 n.14, 823 A.2d 329 (2003) ("[W]e consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue . . . .

supra, 256 Conn. 404–405; *In re Victoria B.*, supra, 79 Conn. App. 259 n.15.

The judgment is affirmed.

In this opinion the other judges concurred.

Where the parties cite no law and provide no analysis of their claims, we do not review such claims.").