IN RE BREA B.*
(AC 22790)

Foti, Dranginis and West, Js.

Argued November 18, 2002—officially released March 11, 2003

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David J. Reich,* for the appellant (respondent mother).

*Maureen D. Regula,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Eliot D. Prescott,* assistant attorney general, for the appellee (petitioner).

*Geraldine M. Menn,* for the minor child.

*Opinion*

WEST, J. The respondent mother[1] appeals from the judgment of the trial court terminating her parental rights with respect to her minor child. On appeal, the respondent claims that (1) the evidence was not clear and convincing that there is no ongoing parent-child relationship, (2) the court improperly found that she did an act of commission or omission within the meaning of General Statutes § 17a-112 (j) (3) (C) and (3) the evidence was not clear and convincing that the physical injury she inflicted on the child was not accidental. We affirm the judgment of the trial court.

The following facts and procedural history underlie the respondent's appeal. The child was born on April 13, 1990. At the time of the child's birth, the respondent was a twenty-one year old single mother who had just left active duty with the United States Marine Corps. She lived with her great aunt and relied heavily on relatives to help her raise the child during the first five years of her daughter's life.

On January 18, 2000, when the child was nine years old, the respondent attacked the child with a large hunt-

---

[1] The respondent mother was unable to identify the child's father with any degree of certainty. The court identified the likely father, and notice by publication was provided to him at his last known area of residence. The court terminated the putative father's parental rights on August 28, 2001, and he is not a party to this appeal. We therefore refer in this opinion to the respondent mother as the respondent.

ing knife, planning to kill her. During the attack, the respondent stabbed the child at least seven times. The child suffered deep puncture wounds and lost a considerable amount of blood. She struggled with her mother and succeeded in calling 911 for help. At the urging of the police officer who answered the child's telephone call, she fled the house and subsequently was brought by ambulance to a hospital. While undergoing treatment at the hospital, the child repeatedly expressed her fear that her mother would attempt to kill her again.

The respondent was charged with attempt to commit murder, assault in the first degree and risk of injury to a child. The respondent claimed that her actions were the result of a drug induced psychosis. She was acquitted by reason of mental disease or defect.

The petitioner, the commissioner of the department of children and families, secured an order of temporary custody and, on January 21, 2000, filed a petition to terminate the parental rights of the child's parents. The petition subsequently was amended to include several grounds for termination that inadvertently had been left unchecked on the standard petition form. The amended petition alleged that it was in the child's best interest to terminate the respondent's parental rights because "[t]he child has been denied, by reason of an act or acts of commission or omission . . . by the [respondent], the care, guidance or control necessary for her physical, educational, moral or emotional well being," and because [t]here is no ongoing parent/child relationship with respect to the [respondent] that ordinarily develops as a result of the [respondent] having met on a continuing, day to day basis, the physical, emotional, moral or educational needs of the child and to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child."

During the termination proceedings, the respondent again claimed that her actions were the result of a drug induced psychosis. The court found that there was considerable support for that position in the opinions of the court-appointed psychiatrist who examined the respondent in connection with the criminal proceedings and who subsequently testified during the termination hearing. Nevertheless, the court also found that the petitioner had proved by clear and convincing evidence each of the grounds relied on in the petition for the termination of the respondent's parental rights. The respondent's parental rights were terminated on September 10, 2001. This appeal followed.

I

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under General Statutes § 17a-112 (j)] exists by clear and convincing evidence. If the

trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citations omitted; internal quotation marks omitted.) *In re Gary B.*, 66 Conn. App. 286, 289–90, 784 A.2d 412 (2001).

General Statutes § 17a-112 (j) (3) (D) provides that the court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

"This part of the statute requires the trial court to undertake a two-pronged analysis. First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop. . . . In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. . . . The ultimate question is whether the child has no present memories or feelings for the natural parent. . . . Feelings for the natural parent connotes feelings of a positive nature only." (Citations omitted; internal quotation marks omitted.) *In re Jonathon G.*, 63 Conn. App. 516, 525, 777 A.2d 695 (2001). Where the child's feelings toward the parent are ambivalent, there must be a finding that "no positive emotional aspects of the relationship survive." *In re Jessica M.*, 217 Conn. 459, 470, 586 A.2d 597 (1991).

The respondent claims that the court's finding that there was no ongoing parent-child relationship is not supported by clear and convincing evidence. The respondent argues that the evidence shows, to the contrary, that she met the child's physical, emotional, moral and education needs during, at a minimum, the three years immediately preceding the assault. In support of her argument, the respondent cites testimony that she was actively involved in the child's activities and that she appeared to have a healthy relationship with the child. Such history, the respondent argues, belies any serious possibility that the child has no positive memories or feelings for her mother.

Regardless of the quality and nature of the respondent's relationship with her daughter prior to the assault, it is the character of that relationship at the time of the filing of the termination petition that is relevant to the court's inquiry. See *In re Shane P.*, 58 Conn. App. 234, 241, 753 A.2d 409 (2000). The court heard sufficient evidence to find that the relationship between the respondent and her child had been irrevocably damaged by the trauma that the child suffered as a result of the assault. The testimony presented at the termination hearing supports a finding that whatever the respondent's degree of culpability for the attack, the trauma that the child suffered was no less real to her and no less destructive to whatever parent-child relationship may have existed at one time.

The child was evaluated by a child and adolescence psychiatrist who stated that the child is uncertain about how to feel about her mother and that she cannot feel safe in her presence. The psychiatrist noted the child's lack of affect when discussing her mother. When referring to her mother, the child adopted a blank expression and monotonous tone; her affect would flatten and she would withdraw. During the course of three interviews, she never shared any positive memories of experiences

that she had had with her mother. The psychiatrist stated that where there was an enduring positive relationship, he would expect the child to share some positive memories of her mother during sessions, despite the attack.[2]

The psychiatrist also stated his professional opinion that the trauma of the assault is irreversible, that the child would never feel safe and that she would always be anxious about what might happen next if she were to live with her mother. He stated that the respondent's rehabilitation would have no impact on how the child perceives her. If reexposed to her mother, the trauma would be reactivated. The psychiatrist testified that in the case of posttraumatic stress disorders, the symptoms correlate to the nature of the trauma. A trauma of the severity as that involved in this case would likely lead to lasting consequences.

Since the assault, the child also has been seeing a therapist who was an expert in the areas of childhood, adolescent and developmental psychology. At the time that she began counseling, the child was experiencing "night terrors." During the counseling sessions, she stated that many of her memories of her mother included irrational rages, bizarre behavior and physical abuse. She related instances of physical abuse preceding the latest assault, including an incident in which the respondent hit her with a hanger. During her sessions, the child also recounted episodes in which her mother would tell her that she hated her.

---

[2] The psychiatrist also met with the respondent. He concluded that her responses indicated a lack of capacity to parent effectively and to set appropriate limits for the child. Specifically, he saw in her responses indications of a coequal relationship with the child, characterized by bargaining and compromise, rather than an appropriate parent-child relationship. That conclusion is consistent with the testimony of a child therapist who described the child as "parentified," a situation that results when a child is induced to take on parental responsibilities.

In a December, 2000 report, the therapist noted the child's terror of being reexposed to her mother, her apparent depth of feelings against seeing her mother and her frightened emotional response to the possibility of seeing her mother. Thus, the child was still expressing the same fear and exhibiting the same trauma as she had seven months earlier when interviewed by the psychiatrist. The therapist's report also indicates that the child possessed a minimal sense of attachment to her mother and a striking absence of any sense of loss regarding the prospect of not being returned to the custody of her mother. The child experienced her great aunt, rather than her mother, as her psychological parent and expressed a clear preference to have no further contact with her mother.

On the basis of the foregoing, we conclude that the court's finding that there was no ongoing parent-child relationship was not clearly erroneous.

## II

The respondent also claims that the evidence was not clear and convincing that the physical injury to the child was not accidental and that the court improperly found that she did an act of commission or omission within the meaning of § 17a-112 (j) (3) (c). We decline to review those claims.

Because the statutory grounds necessary to grant a petition for termination of parental rights are expressed in the disjunctive, the court need find only one ground to grant the petition. Thus, we may affirm the court's decision if we find that it properly concluded that any one of the statutory circumstances existed. See *In re Alexander C.*, 67 Conn. App. 417, 427, 787 A.2d 608 (2001), aff'd, 262 Conn. 308, 813 A.2d 87 (2003). Having concluded that the court properly found that there was clear and convincing evidence that no parent-child rela-

tionship exists, we need not address the petitioner's remaining claims.

The judgment is affirmed.

In this opinion the other judges concurred.