******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE ADRIANA C. ET AL.*
(AC 36687)

Gruendel, Lavine and Dupont, Js.

*Argued October 9—officially released October 31, 2014***

(Appeal from Superior Court, judicial district of Middlesex, Juvenile Matters at Middletown, Conway, J.)

*Nazli C.*, self-represented, the appellant (respondent mother).

*Stephen Vitelli*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Opinion*

LAVINE, J. General Statutes § 17a-112 (j) (3) (B) (i) provides for the termination of parental rights when the child "has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." Compliance with the specific steps ordered *facilitates*, but does not guarantee, the return of the child to the parent. See *In re Vincent D.*, 65 Conn. App. 658, 670, 783 A.2d 534 (2001) (successful completion of expectations not sufficient to defeat claim that parent has not achieved sufficient rehabilitation). Although a parent may have participated in the programs recommended pursuant to the specific steps ordered, a court may properly find that the parent has failed to achieve rehabilitation. See *In re Coby C.*, 107 Conn. App. 395, 406, 945 A.2d 529 (2008) (rejecting claim that substantial compliance with specific steps bars court from terminating parent rights). "In other words, a finding of rehabilitation is not based on a mechanistic tabulation of whether a parent has undertaken specific steps ordered." *In re Destiny R.*, 134 Conn. App. 625, 627, 39 A.3d 727, cert. denied, 304 Conn. 932, 43 A.3d 660 (2012). The ultimate issue the court must evaluate is whether the parent has gained the insight and ability to care for her children given their ages and needs within a reasonable time. See *In re Eden F.*, 250 Conn. 674, 706, 741 A.2d 873, reargument denied, 251 Conn. 924, 742 A.2d 364 (1999).

The self-represented respondent mother appeals from the judgments of the trial court, rendered after her daughters A and A had been adjudged neglected in a prior proceeding, terminating her parental rights in them on the ground of her failure to achieve the degree of personal rehabilitation that would encourage the belief that within a reasonable time, considering the age and needs of A and A, she could assume a responsible position in their lives.[1] See General Statutes § 17a-112 (j) (3) (B) (i). On appeal, the respondent has raised multiple claims, which may be summarized as contending that the trial court improperly concluded that (1) she had failed to rehabilitate and (2) it was in the best interests of her daughters to terminate her parental rights in them. We affirm the judgments of the trial court.

We review appeals regarding termination of parental rights by the clearly erroneous standard. See *In re Brea B.*, 75 Conn. App. 466, 469, 816 A.2d 707 (2003). "The determinations reached by the trial court that the evi-

dence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence . . . in the whole record . . . ." (Internal quotation marks omitted.) Id.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Internal quotation marks omitted.) *In re Destiny R.*, supra, 134 Conn. App. 629.

In the present case, the trial court found that A and A were born in 2007 and 2009, respectively, and were almost seven and five years old, respectively, at the time of trial.[2] The girls were first adjudicated neglected in July, 2011, but remained in the care of their parents under an order of protective supervision. The petitioner, the Commissioner of Children and Families, filed an order of temporary custody in October, 2011. The parties agreed to open the judgment of neglect and the girls were committed to the custody of the petitioner. At the time of the neglect adjudications in October, 2011, the respondent and the girls' father were abusing substances, neglecting their mental health, engaging in domestic violence, and unable to maintain stable employment and housing.

Between July, 2011, and the trial on the termination petitions, held in February and March, 2014, the respondent was admitted to in-patient substance abuse treatment programs nine times. In April, 2012, the respondent was admitted to Crossroads, where she remained for seven months to attain sobriety. She has been sober since her discharge from that program until the time of trial. When she was discharged from the Crossroads program, the respondent was offered supportive housing, but she declined to take advantage of the offer. Instead, the respondent chose to reside in a different part of the state with a man who is the father of her youngest daughter. See footnote 2 of this opinion. The respondent was required to be monitored by Midwestern Connecticut Council of Alcoholism for her substance abuse and mental health issues. In early 2013, the respondent failed to comply with the monitoring requirement, but she began to see a mental health therapist in September, 2013.

The court found that while she was in the Crossroads program, the respondent visited with A and A weekly until October, 2013, when she missed visits ostensibly due to her newly obtained employment. Since December 20, 2013, however, the respondent has maintained

her weekly visits with A and A. Although the respondent may have taken one or two parenting classes, she and the girls' father have not been able to resolve their coparenting issues. The court found that despite the respondent's having addressed her issues concerning substance abuse and mental health, she failed to obtain stable and appropriate housing required for reunification and to resolve her dysfunctional relationship with the girls' father.

The court further found that the respondent "has made remarkable strides in achieving and sustaining sobriety." Within the several months prior to trial, the respondent was compliant with her weekly attendance at therapy and with a medication regime, and was employed. The court, however, found that stable and appropriate housing still eluded her. The court concluded that although she may be poised to begin parenting a child, the respondent has not gained the ability to care for the needs of A and A. "[I]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child [or children] at issue." (Internal quotation marks omitted.) *In re Kasmaesha C.*, 148 Conn. App. 666, 680, 84 A.3d 1279, cert. denied, 311 Conn. 937, 88 A.3d 549 (2014). The court found that the respondent has come a long way in addressing the reasons why A and A were removed from her care, but when framed in terms of the girls' needs, her progress has not gone far enough. Despite the respondent's love for A and A, she is not yet capable of meeting their needs.[3]

The court found that the girls have not been in the respondent's custody since October, 2011. During that time, A and A they have been in five different placements. During one set of placements, the girls were separated. Since June, 2013, A and A have lived together with a preadoptive foster family. According to their therapist, Sally Miller, who has seen the girls on a weekly or biweekly basis since July, 2013, both girls are adjusting well to school. They also sleep and eat well.

The court concluded that A and A should not be subject to another removal, particularly a removal from the foster family with whom they have bonded and with whom they can attain permanency through adoption. Moreover, the girls' reunification with the respondent, who, in the eight months prior to trial had, in the words of the trial court, "moved toward the periphery of both girls' emotional bond radius," is unknown territory. Any reunification of the respondent with A and A constitutes too big a risk for failure, with the potential for irreparable harm to the girls, with little to no potential net gain for them.[4] For the foregoing reasons, the court found that the petitioner had proven that the respondent had failed to rehabilitate.

In the dispositional phase of the trial, the court made the findings required by § 17a-112 (k). Specifically, the court found that the petitioner timely and accurately had identified the respondent's drug abuse, untreated mental health concerns, domestic violence, unstable housing, and need for coparenting counseling. The Department of Children and Families provided appropriate services, but the respondent chose not to take advantage of the supportive housing offered to her once she achieved sobriety. The court opined that the respondent may have been able to reunify with A and A if she had taken advantage of the housing support that was offered to her when she completed the Crossroads program.

The court also found that petitioner made reasonable efforts to reunify the respondent with A and A. The court ordered steps for the respondent, and she has achieved most of them, but she still lacks stable housing.

The court found that A and A, who were then almost seven and five respectively, love the respondent; and she loves them. The girls have endured much upheaval and transition in their young lives prior to and after their removal from the respondent's custody. Their time in foster care was rocky and disruptive at times. The girls' present foster parents wish to adopt them.[5] The court concluded that "the parent-child bond that presently exists between the girls and the [respondent] is overshadowed by the emotional bond and stability the girls' now enjoy with their foster family." Although the respondent has made significant and substantial personal strides toward rehabilitation, her accomplishments do not include stable housing. In terms of A and A's needs and best interests, the respondent's accomplishments are, in the court's words, "too little, too late."

After finding that no person, agency, parent, or economic circumstances had precluded the respondent from maintaining a meaningful relationship with A and A, the court terminated the respondent's parental rights in them. The court appointed the petitioner the girls' statutory parent and approved the permanency plan finding that it is reasonable and in the girls' best interests to be adopted by their foster parents.

On the basis of our review of the record and the court's thorough memorandum of decision, we conclude that the court properly terminated the respondent's parental rights in A and A in accordance with the statutory requirements. Although the respondent has made admirable strides in her personal life, she has failed to achieve the degree of personal rehabilitation that would encourage a belief that within a reasonable time she could assume a responsible position in the lives of A and A. The sad reality is that sometimes, even parents who love their children are not equipped to

provide their children with what they need, despite the parents' best efforts.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** October 31, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Each girl's name begins with the letter A. The court also terminated the parental rights of the father of A and A, to whom the respondent is married, but he is not a party to this appeal. In this opinion, respondent refers to the mother.

[2] The respondent has a third daughter who is younger than A and A, and a son who is older than they are. At the time of trial, the respondent did not have custody of any of her children.

[3] Nancy Randall, a psychologist, evaluated the respondent and her daughters several times from December, 2012 to December, 2013. Randall opined that the respondent needs more time than most adults to learn new information and skills. Her avoidant style exacerbates that need, as she pulls back when people are placing demands on her. She performs best in situations where things are clearly defined for her and there is a certain degree of structure. She has trouble when expectations are not clear. She is at risk of making poor choices when she feels stressed or unsure of herself. She is defensive when people try to change her mind or get her to consider alternate perspectives.

The respondent is unwilling to give up her fight for A and A, and clearly wants to have a relationship with them. According to Randall, the respondent does not show good understanding of the girls' emotional needs and how they might react to a reunification, particularly given her long-standing lack of stability. It is more likely that she would minimize the girls' experiences that do not fit her own beliefs or preferences. The respondent is able to form attachments and cares about relationships, but she has little understanding of how to resolve differences or how to deal with others' needs that conflict with her own.

[4] The court found a further complicating issue in that A and A, at the respondent's directive, do not know about their baby half-sister. The respondent is working to obtain custody of her youngest child, but she had not yet met the need for stable housing.

[5] The girls' foster parents facilitate the girls' relationship with their older half-brother, which the girls enjoy.

---