******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE JAELYNN K.-M. ET AL.*
## (AC 47367)

Alvord, Cradle and Harper, Js.

*Syllabus*

The respondent mother appealed from the trial court's judgments rendered for the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor children. The mother, who had been defaulted for failure to appear at the termination proceedings, claimed, inter alia, that the court violated her right to due process by constructively depriving her of her right to the effective assistance of counsel. *Held*:

The respondent mother's claim that the trial court's constructive deprivation of counsel constituted structural error for which prejudice was presumed and a rule of automatic reversal applied was unavailing, as this court declined to apply such a rule in the context of child protection cases.

Even if this court assumed that the trial court constructively deprived the respondent mother of her right to the effective assistance of counsel, the mother failed to show resulting prejudice and, thus, any violation of that right was harmless beyond a reasonable doubt.

Even if this court assumed that the trial court violated the respondent mother's due process rights when it denied her counsel's request for a continuance of the hearing on the termination petitions because the mother was not present, any error was harmless.

Even if this court assumed that the trial court violated the respondent mother's due process rights by failing to provide her and her counsel with adequate notice of the hearing on the petitions to terminate the mother's parental rights, the mother failed to explain at the hearing on the motion to open the judgments what additional evidence she would have presented had she and her counsel received proper notice and, accordingly, the trial court's error was harmless beyond a reasonable doubt.

Argued September 10—officially released November 25, 2024**

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** November 25, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Procedural History*

Petitions by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor children, brought to the Superior Court in the judicial district of Waterbury, Juvenile Matters, and tried to the court, *Torres, J.*; judgments terminating the respondents' parental rights; thereafter, the court, *Torres, J.*, denied the respondent mother's motion to open the judgments, and the respondent mother appealed to this court. *Affirmed.*

*James P. Sexton*, assigned counsel, with whom were *John R. Weikart*, and, on the brief, *Gail Oakley Pratt*, for the appellant (respondent mother).

*Nisa Khan*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

CRADLE, J. The respondent mother, Jessica K., appeals following the trial court's judgments terminating her parental rights with respect to her children, twins Jayden and Jaelynn.[1] On appeal, the respondent claims that the trial court violated her due process rights under the fourteenth amendment to the federal constitution with respect to the termination trial in (1) constructively depriving her of her right to counsel, (2) denying her assigned counsel's request for a continuance, and (3) finding that the respondent and her counsel had adequate notice of the proceeding. We affirm the judgments of the trial court.[2]

---

[1] The court also terminated the parental rights of Jonathan M. and John Doe, the putative fathers of the children. Paternity of the children has not been established. Because neither putative father is participating in this appeal, we refer in this opinion to the respondent mother as the respondent.

[2] The attorney for the minor children filed a statement taking no position regarding the issues on appeal.

The following facts and procedural history are relevant to our consideration of the respondent's appeal. Although this appeal concerns only the respondent's parental rights with respect to Jayden and Jaelynn, the respondent has two older children. Prior to the birth of Jayden and Jaelynn, the two older children had been adjudicated neglected due to the respondent's substance abuse, and the respondent's parental rights with respect to the older children were terminated at separate proceedings in 2021. Thereafter, Jayden and Jaelynn were born prematurely in August, 2022. The Department of Children and Families (department) immediately became involved with the children's care after a mandated reporter at the hospital notified the department that the children had tested positive for cocaine and opiates at birth. Due to their premature births and exposure to drugs in utero, the children have medically complex needs.

On August 30, 2022, the petitioner, the Commissioner of Children and Families, filed neglect petitions on behalf of the children. On the same date, the petitioner obtained ex parte orders of temporary custody. The respondent failed to appear at both the September 7, 2022 hearing on the orders of temporary custody and the September 28, 2022 initial plea hearing on the neglect petitions, and, each time, the court rendered a default judgment against the respondent. After the respondent again failed to appear at the October 12, 2022 dispositional hearing on the neglect petitions, the court adjudicated the children neglected and committed them to the care of the petitioner.

On June 6, 2023, the court approved permanency plans for the termination of the respondent's parental rights. On July 11, 2023, pursuant to the approved permanency plans, the petitioner filed a petition for termination of parental rights on behalf of each child. On the same day, the petitioner also filed, and the court

granted, a motion for order of notice by publication with respect to the respondent.[3] On July 20, 2023, notice of the next hearing, which was scheduled for August 2, 2023, was published in the Waterbury Republican-American.[4] On the same day the notice was published, Morgan Bell, a department social worker assigned to the respondent's case, spoke on the phone with the respondent, who was at Rushford, a provider of addiction and mental health treatment programs, after entering an inpatient drug detoxification treatment program two days earlier, and told the respondent about the upcoming hearing.[5] The respondent also asked Bell about visitation with her children, but a clinician at Rushford informed Bell that the respondent could not have visitors while in the detoxification treatment program. On July 26, 2023, the respondent went to the trial court clerk's office and applied for the appointment of counsel with respect to the termination petitions, indicating on the application that she was homeless

[3] The petitioner included with her motion an affidavit indicating that the respondent's whereabouts were unknown despite the department's diligent efforts to search for the parent, which stated: "The following efforts were made to locate the parent: [Department of Correction] search; Judicial search; Lexis Nexis; certified letters sent to the last known address; unannounced home visits to last known address."

[4] The published notice stated: "NOTICE TO: Jessica [K.], mother of male and female child born [in August, 2022] to Jonathan M./John Doe. A petition has been filed seeking: Termination of parental rights of the above named in minor child(ren). The petition, whereby the court's decision can affect your parental rights, if any, regarding minor child(ren) will be heard on 8/2/23 at 3:00 p.m. at SCJM, 7 Kendrick Ave, Waterbury, CT, 06702. . . . RIGHT TO COUNSEL: Upon proof of inability to pay for a lawyer, the court will provide one for you at court expense. Any such request should be made immediately at the court office where your [h]earing is to be held."

[5] The following colloquy between the court and Bell occurred at the August 2, 2023 proceeding:

"The Court: [D]id you ever connect with [the respondent]?

"The Witness: Yes, I have. . . . I talked to her on the phone on July 20th.

"The Court: Did you tell her about today's hearing?

"The Witness: Yes, I did."

It is not clear from the record whether Bell had informed the respondent of the exact date, time, location, or purpose of the hearing.

and had "just got[ten] out of detox . . . ." She listed a homeless shelter for her address. Thereafter, Attorney Deborah Dombek was appointed counsel for the respondent, and she filed her appearance on July 31, 2023.

Two days after Dombek filed her appearance, on August 2, 2023, the court, *Torres*, *J.*, held a hearing on the termination petitions. The respondent did not appear. The court made a finding of notice by publication to the respondent and defaulted the respondent for failure to appear. Dombek objected to proceeding with the hearing without her client, explaining to the court that she had been appointed just days earlier and had not been able to communicate with the respondent because the phone number the department had provided for her was no longer in service. Dombek then orally requested additional time to try to locate the respondent, stating that she had received new information concerning the respondent's whereabouts from a department worker earlier that day. The court overruled Dombek's objection and denied her request for a continuance.

The court proceeded to hold a termination trial on the merits. The petitioner presented her evidence, which consisted only of testimony by Bell and the department's social study, which was admitted as a full exhibit.[6] Dombek did not cross-examine Bell, and when

---

[6] Although Bell had been assigned to the respondent's case in July, 2023, one month prior to the hearing, she testified that, after receiving the assignment, she familiarized herself with the respondent's case by "briefly look[ing] through the . . . case record . . . ." During Bell's brief testimony, which lasted seven minutes, she discussed her July 20, 2023 phone conversation with the respondent, noting that the respondent had requested visitation, but further stated that, to the best of her knowledge, the respondent had never visited with the children, had never provided any gifts, letters, or financial support, and, prior to that request, had never inquired of the department about the children's education, health, or well-being. Bell also indicated that she was unsure whether the respondent was still in treatment at the time of the August 2, 2023 proceeding because Bell had been unable to reach the respondent or receive information on her treatment in subsequent calls to Rushford.

the court asked Dombek whether she wished to present any evidence, she stated that she did not and reiterated that she had not had an opportunity to speak with her client.

On the basis of the evidence presented, the court rendered a decision from the bench terminating the respondent's parental rights, pursuant to General Statutes § 17a-112 (j),[7] on the grounds that the respondent had abandoned her children and had failed to rehabilitate herself.[8] With respect to the ground of abandonment, the court found that "[the respondent] has failed to maintain a reasonable degree of interest, concern or responsibility. From the birth of these children, it looks like the [respondent] has failed to visit with them. She hasn't provided any gifts, letters or financial support

[7] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the [department] has made reasonable efforts to locate the parent and to reunify the child with the parent . . . unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . (2) termination is in the best interest of the child, and (3) (A) the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; [or] (B) the child (i) has been found by the Superior Court . . . to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[8] The termination of parental rights petitions also asserted as grounds for termination § 17a-112 (j) (3) (D) ("there is no ongoing parent-child relationship") and (E) ("the parent of a child under the age of seven years who is neglected, abused or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families"). In rendering its judgments at the August 2, 2023 proceeding, the court indicated that it was "not making findings at this time" with respect to those grounds.

during the time that the case has been pending and the filing of the termination petitions . . . [a]nd she has not inquired about the children's well-being as of the filing of [these] termination of parental rights petition[s]." As to the ground of failure to rehabilitate, the court made the following findings: "[Neglect] [p]etitions were filed on August 30 [2022]. On September 7, 2022, the [respondent was] defaulted for [her] failure to appear. . . . On September 28, 2022, both children were adjudicated 'neglected,' based on the default of [the respondent]. Specific steps were issued . . . and have been provided for the [respondent] as an outline for [her] to rehabilitate. [The respondent] has [not] made [herself] available to the [department] to review or engage in services, and it is unlikely at this point in [her life] that [she is] likely to take a responsible position in these children's lives, who have been in care for almost a year of time."[9] The court further concluded that it was in the children's best interests for the respondent's parental rights to be terminated.

After rendering its judgments, the court stated that the default judgments against the respondent would remain on file for 120 days and that if Dombek were to discover "any information that . . . [would have] precluded [the respondent] from appearing in court today," she was "more than welcome" to present that evidence by November 30, 2023.[10]

Thereafter, on November 8, 2023, the respondent moved to open the August 2, 2023 default judgments pursuant

---

[9] The court also found, as required under § 17a-112 (j) (1), that the department had made reasonable efforts to locate the respondent and reunify the children with the respondent and, additionally, that the respondent was unwilling or unable to benefit from reunification efforts. See *In re Jorden R.*, 293 Conn. 539, 552–53, 979 A.2d 469 (2009) (explaining that either finding is sufficient to satisfy statutory requirement).

[10] The court's memorandum of the August 2, 2023 proceeding stated: "Dombek can reopen case within the next 120 days starting today until 11/30/23 if contact information arises for [the respondent]."

to General Statutes § 52-212 (a)[11] on the ground that she "was homeless for a period of time and was not properly served" with the termination petitions. The petitioner filed a written objection specifically asserting that the respondent did not comply with § 52-212 (a) in that she did not state a good defense that existed at the time the termination of parental rights judgments were rendered.[12] On January 4, 2024,[13] the court, *Torres, J.*, held a hearing on the motion to open, at which both the respondent and Dombek were present. Dombek argued at the hearing that "[the motion to open is] all under good cause . . . . [The court] had given me the opportunity in [its August 2, 2023] order . . . that if I filed [this motion] in a timely fashion and new information came to light about [the respondent's] whereabouts, that I could, in fact, open the [August 2, 2023] judgment[s]. The other arguments are that my client, I believe, was in a rehab facility . . . . She was not served. . . . It's a due process right. It's the most fundamental right. The most precious of rights [is] to raise your children without government interference, and I think that [the respondent] deserves an opportunity to

---

[11] To set aside a default judgment, General Statutes § 52-212 (a) provides in relevant part that the moving party must show (1) "reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment" and (2) "that the [moving party] was prevented by mistake, accident or other reasonable cause from . . . making the defense."

[12] The petitioner's written objection further asserted that the respondent's motion also failed to satisfy the second prong of § 52-212 (a) in that it failed to show that the respondent's absence at the August 2, 2023 proceeding was due to "mistake, accident or other reasonable cause." In addition, the petitioner argued that the respondent failed to comply with § 52-212 (c) because the motion was not verified by an oath of the respondent or her attorney.

[13] The hearing originally was scheduled for December 12, 2023. On that date, the court noted that the respondent, who was incarcerated at the time, was present in the building but that Dombek was unable to attend the hearing due to illness. The court continued the hearing to January 4, 2024, over the objection of the petitioner's counsel, stating that "it would be fundamentally unfair for the [respondent] to proceed [as a self-represented party] without her counsel present . . . ."

have the case heard on its merits . . . .” Following Dombek’s argument, the court inquired whether the respondent wished to testify, stating: “She doesn’t have to. She has the right to remain silent. If [she is] going to testify . . . the issues she’s going to have to testify to [are] where was she, what the defense is. . . . So, it’s grounds [of abandonment and failure to rehabilitate] from the time of the birth of the children to the time of the filing of the [termination petitions] . . . there needs to be a defense. So, if [the respondent is] able to testify as to . . . a valid defense as to the grounds for abandonment and failure to rehabilitate, then [the court will] hear that testimony.” After a brief discussion with her counsel off the record, the respondent declined to testify. The court proceeded to render a decision from the bench denying the motion to open, finding that the respondent failed to satisfy either requirement of § 52-212 (a) because she did not present a “good defense . . . with respect to the [termination] petition[s]” regarding either ground for termination and because “there [was] no information before the court that there was something that prevented [the respondent] from presenting [a] valid defense at the time of the [August 2, 2023 hearing].”[14]

The respondent thereafter filed an appeal from the court’s denial of her motion to open, and, on March 25, 2024, this court granted the respondent’s motion for permission to file a late appeal challenging the trial court’s August 2, 2023 judgments terminating the respondent’s parental rights.

I

The respondent first claims that the trial court constructively deprived her of her right to the effective

_____

[14] The court also denied the motion to open on the ground that the respondent had not verified the motion under oath, as required by statute. See General Statutes § 52-212 (c).

assistance of counsel under the fourteenth amendment to the federal constitution "[b]y requiring [Dombek] to represent a client she had never met, let alone discussed the case with, at [the August 2, 2023] termination of parental rights trial after having been assigned only three days earlier . . . ." The respondent claims that the court's constructive denial of counsel constitutes structural error for which prejudice is presumed and, therefore, a rule of automatic reversal applies. We disagree and decline to apply such a rule in the context of child protection cases. Accordingly, even if the respondent was constructively deprived of her constitutional right to the effective assistance of counsel at the August 2, 2023 termination proceeding,[15] we conclude that the respondent fails to show resulting prejudice and, therefore, any violation of that right was harmless beyond a reasonable doubt.

It is clear, and the parties do not dispute, that the respondent had a statutory right to counsel at the termi-

---

[15] A parent facing termination of his or her parental rights "is constitutionally entitled to the effective assistance of counsel only if he [or she] had a constitutional right to appointed counsel in the termination proceeding." *In re Jonathan M.*, 255 Conn. 208, 225, 764 A.2d 739 (2001). On appeal, the respondent claims only that her constitutional right to counsel derives from the fourteenth amendment to the federal constitution rather than any provision of the Connecticut constitution. In *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), the United States Supreme Court "declined to hold that due process requires the appointment of counsel whenever a state seeks to terminate the parental rights of an indigent parent. . . . Instead, the court held that whether the federal constitution requires the appointment of counsel is a fact specific determination that must be made . . . on a case-by-case basis." (Citation omitted.) *In re Taijha H.-B.*, 333 Conn. 297, 319–20, 216 A.3d 601 (2019). This determination must be made by applying the due process balancing test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)—that is, by "weighing the competing private and governmental interests at stake and the risk of an erroneous decision in the absence of appointed counsel . . . ." *In re Taijha H.-B.*, supra, 319. We assume, without deciding, that the respondent had a constitutional right to the effective assistance of counsel at the termination proceeding under this framework. We also assume, without deciding, that the court constructively deprived her of that right.

nation proceeding.[16] "Because of the substantial interests involved, a parent in a termination of parental rights hearing has the [statutory] right not only to counsel but to the effective assistance of counsel." *State* v. *Anonymous*, 179 Conn. 155, 160, 425 A.2d 939 (1979). When the right to effective assistance of counsel is challenged, our Supreme Court has adopted the following standard: "The range of competence . . . requires not errorless counsel, and not counsel judged ineffective by hindsight, but counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in [that particular area of the] law." (Internal quotation marks omitted.) Id. "The defendant must, moreover, demonstrate that the lack of competency contributed to the termination of parental rights." Id. Even where a parent in a termination proceeding has a constitutional, rather than merely statutory, right to counsel, the parent must show resulting prejudice to prevail on a claimed violation of that right. "Under such circumstances, it would be a waste of judicial resources, and a pedantic exercise, to delve deeply into the constitutional merits of a claim that can appropriately be resolved in accordance with the relevant harmless error analysis." (Internal quotation marks omitted.) *In re Amias I.*, 343 Conn. 816, 834, 276 A.3d 955 (2022); see id., 837–38 (assuming that children have constitutional right to conflict free counsel in termination proceeding and concluding that any violation was harmless beyond reasonable doubt).

On appeal, the respondent claims that the court's constructive deprivation of counsel constitutes a struc-

---

[16] See General Statutes § 46b-135 (b) ("[a]t the commencement of any proceeding on behalf of a neglected, uncared-for or abused child or youth, the parent or parents or guardian of the child or youth shall have the right to counsel, and . . . if they are unable to afford counsel, counsel will be provided for them"); General Statutes § 45a-717 (b) (at hearing on petition for termination of parental rights, "the court shall inform [the] respondent parent of his or her right to counsel and upon request, if he or she is unable to pay for counsel, shall appoint counsel to represent such respondent parent").

tural error and, therefore, a showing of prejudice is not necessary to merit reversal. "Structural [error] cases defy analysis by harmless error standards because the entire conduct of the trial, from beginning to end, is obviously affected . . . ." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 505, 903 A.2d 169 (2006). In making this claim, the respondent relies principally on *United States* v. *Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). In *Cronic*, the United States Supreme Court held that, although a defendant claiming ineffective assistance of counsel under the sixth amendment to the federal constitution generally must show resulting prejudice, "[t]here are . . . circumstances that are so likely to prejudice the accused" in a criminal proceeding that a presumption of prejudice applies, including, inter alia, "when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate . . . ." Id., 658–60. Specifically, the respondent claims that *Cronic*'s presumption of prejudice applies in this case because the court called on Dombek "to render assistance in a situation in which no competent attorney could do so." (Internal quotation marks omitted.)

We disagree with the respondent's contention that *Cronic* applies in the context of the respondent's deprivation of counsel claim. Connecticut courts consistently have declined to apply the structural error doctrine in the child protection context.[17] "[T]he significant

---

[17] See *In re Amias I.*, supra, 343 Conn. 839 ("[a]lthough this court has recognized that structural error can occur outside the criminal context . . . to the best of our knowledge, we have never applied it in the child dependency context" (citation omitted)); see also *In re Gabriel S.*, 347 Conn. 223, 237–38, 296 A.3d 829 (2023) (stating that, even if it had concluded that trial court violated respondent parent's due process right to adequate notice of grounds for terminating his parental rights, respondent's claim failed because record indicated that such violation would be harmless beyond reasonable doubt); *In re Amias I.*, supra, 839 (declining to apply structural error doctrine in context of termination proceeding where respondent parent claimed that

differences between child dependency proceedings and other judicial proceedings militate decisively against applying a per se reversible error rule in dependency cases." *In re Amias I.*, supra, 343 Conn. 840. This is because "dependent children have a critical interest in avoiding unnecessary delays to their long-term placement." (Internal quotation marks omitted.) Id., 841. "[A] sense of *permanency*, in and of itself, is crucial for a child's welfare." (Emphasis in original.) *In re Ivory W.*, 342 Conn. 692, 734, 271 A.3d 633 (2022). These interests are especially critical here, where the respondent's children have medically complex needs that require a stable caregiver capable of attending medical appointments, coordinating treatment, and meeting their ongoing medical needs. Accordingly, we cannot agree "that prejudice is irrelevant in a dependency proceeding when the welfare of the child is at issue and delay in resolution of the proceeding is inherently prejudicial to the child . . . . [T]he price that would be paid for [applying such a rule], in the form of needless reversals of dependency judgments, is unacceptably high in light of the strong public interest in prompt resolution of these cases so that the children may receive loving and secure home environments as soon as reasonably possible." (Internal quotation marks omitted.) *In re Amias I.*, supra, 840–41.

Because we conclude that *Cronic*'s presumption of prejudice does not apply in this case, the respondent's constructive deprivation of counsel claim is subject to harmless error review.[18] See, e.g., *In re Gabriel S.*, 347

trial court violated her children's constitutional right to conflict free counsel by failing to inquire into whether their attorney had conflict of interest); *In re Elvin G.*, 310 Conn. 485, 507 n.20, 78 A.3d 797 (2013) (disagreeing with contention that structural error doctrine should apply where trial court failed to provide statutorily required specific steps to parent in termination of parental rights proceeding when record sufficiently demonstrated that alleged error was harmless).

[18] We further note that, although other states have applied *Cronic*'s presumption of prejudice to child protection cases, our Supreme Court precedent does not support a finding of structural error where, as we conclude here, "the effects of the error are quantifiable and . . . [the] court can

Conn. 223, 237–38, 296 A.3d 829 (2023) (noting that, even if it were to conclude that respondent parent's due process rights were violated at termination of parental rights proceeding, respondent's claim would fail under harmless error review). On appeal, the respondent argues that the petitioner cannot prove the harmlessness of the alleged violation "because without relying on impermissible speculation, it cannot demonstrate that the result would have been the same . . . ." We disagree and conclude that the record is sufficient for us to determine that, even if the court constructively deprived the respondent of her right to counsel, any violation was harmless beyond a reasonable doubt.

We first reiterate that, although the court defaulted the respondent for her failure to appear at the August 2, 2023 proceeding, the court, before rendering its judgments, held a trial on the merits, requiring the petitioner to prove by clear and convincing evidence the statutory requirements to terminate the respondent's parental rights, including the grounds for termination and that it was in the minor children's best interests for the respondent's parental rights to be terminated. Although the respondent was not present at the termination trial held at the August 2, 2023 proceeding, she thereafter moved to open the August 2, 2023 judgments terminating her parental rights. It is well settled that a party who has filed a motion to open has the burden of showing (1) "reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment [he or she seeks to open]" and (2) "that [he or she] was prevented by mistake, accident or other reasonable cause from . . . making the defense." General Statutes § 52-212 (a). It is thus clear that to prevail on a motion to open, two things must occur. "There must be a showing that (1) a good

___

determine beyond a reasonable doubt that the error was harmless." *In re Amias I.*, supra, 343 Conn. 839.

defense, the nature of which must be set forth, existed at the time judgment was rendered, and (2) the party seeking to set aside the judgment was prevented from making that defense because of mistake, accident or other reasonable cause. . . . Since the conjunctive and meaning in addition to is employed between the parts of the two prong test, both tests must be met." (Citation omitted; internal quotation marks omitted.) *In re Ilyssa G.*, 105 Conn. App. 41, 45–46, 936 A.2d 674 (2007), cert. denied, 285 Conn. 918, 943 A.2d 475 (2008). "The manifest purpose of a motion to open . . . is to provide a mechanism by which a defaulted party has an opportunity to be heard." *In re Skylar F.*, 191 Conn. App. 200, 208, 215 A.3d 750 (2019); see id. (concluding that respondent father had opportunity to be heard in connection with court's judgment adjudicating his child neglected, rendered after respondent was defaulted for failure to appear, because "[b]y filing the motion to open, the respondent invoked his right to due process, specifically, the right to be heard as to why he failed to appear and whether he had a good defense [to the neglect petition]").

Accordingly, in filing the motion to open the August 2, 2023 judgments, the respondent had an opportunity to be heard with respect to the judgments terminating her parental rights. On appeal, the respondent does not claim that she lacked adequate representation of counsel at any point during the pendency of her motion to open, and the record indicates that the respondent had ample time to prepare with counsel for the January 4, 2024 hearing on her motion to open.[19] Nonetheless, the respondent, both in her written motion to open and at the January 4, 2024 hearing on the motion, failed to present *any* evidence with respect to a good defense

[19] The respondent filed the motion to open on November 8, 2023, roughly two months prior to the January 4, 2024 hearing on the motion.

to the termination petitions.[20] Accordingly, where the respondent and her counsel had an opportunity to present evidence challenging the termination of her parental rights and failed to do so, we cannot conclude that the respondent would have been able to present such evidence at the August 2 proceeding if not for the court allegedly depriving her of the right to counsel.

[20] We note that, on appeal, the respondent asserts that "[Dombek] was led to believe that her motion to open, which did not rely on [Practice Book] § 35a-18 or § 52-212, would be granted automatically if she were able to locate the respondent and timely moved to open the termination judgment." Accordingly, although the respondent concedes that the purpose of a motion to open pursuant to § 52-212 is to provide a defaulted party with the opportunity to be heard, she nonetheless argues that her "rights to due process could not have been vindicated" by the motion to open in this case because "her attorney was not aware that the court would require" the respondent, pursuant to her motion to open, to present a good defense to the termination petitions. (Internal quotation marks omitted.)

In light of the record before us, however, we cannot agree that the respondent's failure to avail herself of the opportunity to be heard pursuant to her motion to open can be attributed to her counsel's interpretation of the requirements to prevail on that motion. Section 52-212 and the corresponding rule of practice, Practice Book § 35a-18, expressly make clear the evidentiary requirements a party must satisfy when filing a motion to open. Although the court did not set forth these requirements expressly at the August 2, 2023 proceeding or in its corresponding memorandum of decision, we agree with the petitioner that the court also did not indicate that the respondent would be entitled to open the judgments as a matter of right or that she would otherwise be relieved of those statutory requirements. We further note that, although the respondent's motion to open did not reference § 52-212, the petitioner's written objection to the motion, which it filed one day after the respondent's motion was filed and two months prior to the January 4, 2024 hearing, should have put the respondent on notice of the statutory requirements she needed to satisfy to prevail on her motion to open. See footnote 12 of this opinion. Moreover, at the January 4, 2024 hearing on the motion to open, the court, before ruling on the motion, expressly stated that the respondent has the burden of showing "a valid defense as to the grounds for abandonment and failure to rehabilitate . . . ." We note that, in response to the court's statement, Dombek did not claim to be unaware of this requirement or argue that the requirement did not apply to the respondent's motion to open, nor did Dombek request or indicate that she needed additional time to present evidence of a good defense. Accordingly, although the respondent argues on appeal that the failure to present evidence of a good defense was because Dombek "was not prepared to put on [such]

For the first time on appeal, however, the respondent argues, "[b]y way of an appellate offer of proof," that she "did make efforts to visit with her children, was taking steps to address her substance abuse, and often did not have notice of court proceedings." Still, the respondent fails to assert with any specificity what additional evidence she would have introduced, had she not been constructively deprived of counsel at the termination proceeding, that would have rebutted the petitioner's evidence or affected the ultimate outcome of the proceeding.[21] See *In re Ivory W.*, supra, 342 Conn. 732 n.26 (noting that, even if trial court unconstitutionally precluded respondent from presenting defense to termination of parental rights petition by improperly denying her request for continuance, it was incumbent on respondent to make "proffer of the specific testimony" explaining how her testimony could have affected outcome of termination proceeding had court granted continuance). The respondent, in support of her claims on appeal, points specifically only to her request for visitation during the July 20, 2023 phone call with Bell and to the fact that she had been in a detoxification treatment program at Rushford. Bell, however, testified to both these points during the August 2, 2023 proceeding, and the respondent fails to explain how, had she been able to present evidence that had *already* been presented

evidence" at the January 4, 2024 hearing, we conclude that the record before us does not support the respondent's claim.

[21] The respondent also argues that, "even if [she] did not have a defense, at [the] termination trial she would have [had] the opportunity to challenge the testimony of the witnesses and the evidence sought to be admitted, which could [have] cause[d] the court to find that the petitioner had failed to meet her burden, despite the respondent not putting forth a defense." We note, however, that, although the respondent contends that "[f]acts found in the absence of due process are inherently unreliable," she concedes that she has not challenged any of the court's factual findings as clearly erroneous, nor does she challenge the reliability, accuracy, or admissibility of any specific evidence the petitioner presented at the August 2, 2023 proceeding.

by the petitioner, the outcome of the proceeding might have been different. Additionally, the respondent fails to point to any specific evidence to support her claim on appeal that she often lacked notice of court proceedings. Even if she had, however, such evidence would have been extraneous to the court's finding of abandonment, which, rather than relying on the respondent's lack of attendance at prior proceedings, relied only on the respondent's failure to visit with the children, her failure to provide any financial or emotional support, and her lack of interest in the children's well-being. It is thus clear that none of the evidence the respondent claims to proffer on appeal would have affected the court's finding of abandonment.[22] The respondent therefore fails to explain on appeal what additional evidence she would have presented, had the court not constructively deprived her of counsel, that could have affected the ultimate outcome of the August 2, 2023 proceeding.

Accordingly, even if the court constructively deprived the respondent of her constitutional right to counsel at the August 2, 2023 proceeding, we conclude that any violation was harmless beyond a reasonable doubt.

II

Next, the respondent claims that the court violated her due process rights in denying Dombek's oral request for a continuance at the August 2, 2023 proceeding.

---

[22] Because we conclude that the respondent's proffered evidence would not have affected the court's finding of abandonment as a ground for termination, it is not necessary for us to determine whether such evidence could have affected the court's finding of failure to rehabilitate as a ground for termination. See *In re Brea B.*, 75 Conn. App. 466, 473, 816 A.2d 707 (2003) ("Because the statutory grounds necessary to grant a petition for termination of parental rights are expressed in the disjunctive, the court need find only one ground to grant the petition. Thus, we may affirm the court's decision if we find that it properly concluded that any one of the statutory circumstances existed.").

Because Dombek did not frame the request for a continuance as a matter of due process,[23] we review the respondent's unpreserved constitutional claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[24] "The test set forth in *Golding* applies in civil as well as criminal cases. . . . Pursuant to the *Golding* doctrine, we may review an unpreserved claim only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Emphasis in original; internal quotation marks omitted.) *In re Na-Ki J.*, 222 Conn. App. 1, 7, 303 A.3d 1206, cert. denied, 348 Conn. 929, 304 A.3d 860 (2023).

We assume, without deciding, that the respondent's claim satisfies the first three prongs of *Golding*, and we proceed to determine whether, under *Golding*'s fourth

[23] Dombek stated only that she would "like a little bit of an opportunity to try to track [the respondent] to see where she's at."

[24] The respondent claims that she "advanced a due process argument [at trial] that can be expanded upon on appeal to encompass the other due process claims" she raises on appeal. Dombek, however, did not raise a due process claim at the August 2, 2023 termination proceeding, and, although she stated at the January 4, 2024 hearing on the motion to open that the respondent has a "due process right" to raise her children, Dombek did not argue specifically that the denial of the continuance violated the respondent's due process rights. Accordingly, to the extent that the respondent contends that her due process claims were preserved before the trial court, we disagree. See *In re Kiara Liz V.*, 203 Conn. App. 613, 621 n.8, 248 A.3d 813, cert. denied, 337 Conn. 904, 252 A.3d 364 (2021).

prong, the court's denial of Dombek's request for a continuance to locate her client was harmless error. As set forth previously in this opinion, Dombek subsequently located the respondent, and the respondent thereafter filed the motion to open the August 2, 2023 judgments. In doing so, the respondent had the opportunity to be heard with respect to the termination judgments at the January 4, 2024 hearing on her motion to open. Despite having nearly two months to prepare with her counsel for the upcoming January 4, 2024 hearing, the respondent failed to present *any* evidence with respect to a good defense to the termination of her parental rights. We therefore conclude that the court's denial of Dombek's request for a continuance was harmless beyond a reasonable doubt for the same reasons set forth in part I of this opinion. Accordingly, the respondent's claim fails under the fourth prong of *Golding*.[25]

### III

The respondent next claims that the court violated her due process rights in failing to provide her and her counsel with adequate notice of the August 2, 2023 proceeding. Specifically, the respondent claims that notice was constitutionally insufficient in that the court

---

[25] In reaching this conclusion, we are mindful of the compelling interests that are at stake in proceedings to terminate parental rights, including the strong public interest in the prompt resolution of these cases. However, we emphasize that a respondent in a termination of parental rights proceeding has a statutory right to the effective assistance of counsel, and when assigned counsel is appointed just days before a termination hearing and has not had an opportunity to speak with his or her client, and counsel makes a reasonable request for a continuance, the trial court ordinarily should strongly consider granting that request. This is especially the case where, as here, counsel had obtained new information as to how to contact the client with whom she previously had been unable to communicate. In the present case, the record reflects no compelling reason as to why the request was denied. We conclude, however, for the reasons stated herein, that the denial of counsel's request for a continuance was harmless beyond a reasonable doubt.

(1) failed to notify Dombek that the hearing would be an evidentiary trial to terminate the respondent's parental rights, (2) failed to state the grounds for the termination of parental rights petitions, and (3) improperly relied on notice by publication. Because the respondent did not raise these arguments before the trial court, we review her unpreserved constitutional claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40.[26]

We assume, without deciding, that the respondent's claim satisfies the first three prongs of *Golding*, and we conclude that her claim fails under *Golding*'s fourth prong for the same reasons set forth in parts I and II of this opinion.[27] Even if we were to assume that notice

---

[26] Although the respondent concedes that she did not advance a claim of inadequate notice before the trial court, she again argues that she "advanced a due process argument [at trial] that can be expanded upon on appeal to encompass" the notice claim she raises on appeal. It is clear from the record before us, however, that to the extent the respondent advanced a due process argument before the trial court, that argument never challenged the constitutionality nor the adequacy of the court's notice specifically. See footnote 24 of this opinion. We therefore conclude that the respondent did not preserve the due process claim regarding notice that she raises on appeal.

[27] We note that "[n]otice by publication, although sometimes necessary, is not the preferred method for assuring full participation in so significant an impairment of constitutionally protected parental rights." *In re Baby Girl B.*, 224 Conn. 263, 295, 618 A.2d 1 (1992). Although the record indicates that the respondent's whereabouts were unknown on July 11, 2023, the date that the petitioner filed, and the court granted, the motion for notice by publication, the record also indicates that on the date of publication, July 20, 2023, Bell spoke with the respondent on the phone after learning that the respondent was in a detoxification treatment program at Rushford. Thereafter, on July 26, 2023, the respondent applied for the appointment of counsel, indicating that she had just been released from the hospital and listing her address as a homeless shelter. We note that between the July 20, 2023 phone call and the August 2, 2023 hearing, at which the court found the published notice to be appropriate and sufficient, it does not appear that the petitioner made any efforts to serve the respondent either at Rushford or at the homeless shelter she listed as her address on her application for counsel. Although we do not reach the merits of the respondent's claim under *Golding*'s third prong—that is, whether notice was constitutionally insufficient and deprived the respondent of a fair trial—we emphasize that "[t]he purpose of the notice in this case was to inform the mother of the hearing regarding the termination of her parental rights. Notice is not a

was constitutionally insufficient, the respondent fails to explain what additional evidence she would have presented had she and her counsel received proper notice of the August 2, 2023 proceeding. See, e.g., *In re Gabriel S.*, supra, 347 Conn. 238 (finding any constitutional violation harmless beyond reasonable doubt where respondent made "no claim that there was additional evidence on that issue that he would have presented if he had received adequate notice"). The respondent does not challenge the sufficiency of the court's notice regarding the January 4, 2024 hearing on her motion to open, and we reiterate that the respondent failed to put on any evidence regarding a good defense to the termination of her parental rights despite having the opportunity—and the statutory burden—to do so at that hearing.

The judgments are affirmed.

In this opinion the other judges concurred.

---

mere perfunctory act in order to satisfy the technicalities of a statute, but has, as its basis, constitutional dimensions. An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Internal quotation marks omitted.) Id., 295–96.